## BROWN v. UNITED STATES.

Court of Appeals of District of Columbia.
Submitted April 1, 1929.    Decided
May 6, 1929.

No. 4878.

B. Emerson, of Washington, D. C., for
appellant.

Leo A. Rover and W. H. Collins, both of
Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and
ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appellant was
convicted in the court below under five counts
of an indictment. Count 1 charged him and
another with keeping a gaming table for the
purpose of betting and wagering money upon the results of horse races; count 2, with
setting up and keeping a gambling device for
the same purpose; count 3, with keeping a
place for the purpose of gambling upon the
results of horse races; count 4, with permitting to be set up and used a gaming table for
the same purpose; count 6, with gambling
and wagering money with one Mingo on the
result of a certain horse race. See Miller v.
United States, 6 App. D. C. 6, 18; Swan v.
United States, 54 App. D. C. 100, 295 F.
921. He was sentenced to the penitentiary
for one year and six months.

Mingo, the person mentioned in the sixth
count, testified that on a day named he made a
bet of $1 on a certain horse to run that day in
a horse race at the Bowie race track, Bowie,
Md., and "that there were 15 or 18 people
in the premises; 4 to 5 pool tables; a cigar
store; fruit stands; and one telephone,
which the defendant Brown had in his hand;
that on the 6th day of April he saw the officers, who were at the time of his testifying
in the witness (court) room, and that $2.00
was given to him; that on this day he gave
a dollar bill to the defendant Brown as a
bet on a horse race, for which he received a
slip with a number on it; that he remained
in the place playing pool, and while there
saw other persons making bets with the defendant Brown."

William Burke, a police officer, testified
that he took the number of a certain dollar
bill and then gave it to the witness Mingo;
that, in the execution of the warrant for the

arrest of the defendant, he and the other officers entered the premises; that Brown was behind the counter and stated that he would answer any questions the officers wanted to ask him. Over the objection and exception of defendant, witness Burke was permitted to testify to a conversation which he had in the room with men he saw there, in which they stated that slips the witness Burke took from them were for bets made on horse races. There was no direct testimony that Brown could or did hear this conversation. Burke testified that the conversations took place in the presence of one of the defendants, but did not remember which one. He further testified that the marked money which had been given to witness Mingo was found in the possession of Brown.

Two other officers, who were present when defendant was arrested, identified some 40 or 50 numbered slips as having been found by them in the premises. These slips were received in evidence over the objection and exception of counsel for the defendant "on the ground that there was no authority in law for their seizure and that nothing was shown to connect them with the defendants on trial."

Brown, who was a witness in his own behalf, denied accepting a bet from Mingo or any other person; testifying that the premises where the arrest was made were occupied by the "Up and Up Club"; that he (Brown) never set up, connived at, assisted, or abetted in the setting up of a gaming table.

■ The first assignment of error is based upon the action of the court in permitting Officer Burke to testify to statements alleged to have been made by men who were on the premises at the time of Brown's arrest, and from whom he took the numbered slips, that the slips "were for bets made on horse races." The sole ground of the objection was that these statements were not shown to have been made in Brown's hearing. Inasmuch as the evidence shows that Brown was present, it will be assumed that he heard the statements. Harrod v. United States, 58 App. D. C. 254, 29 F.(2d) 454, 455. Moreover, the slips were introduced in evidence and spoke for themselves.

■ It is next contended that the court erred in receiving the seized slips in evidence, the ground of the contention being "that there was no authority in law for their seizure, and that nothing was shown to connect them with the defendants on trial." "Property seized in connection with a lawful arrest, and which is held merely as evidence of crime, does not

come within the protection of the provisions of the Constitution prohibiting search and seizure without a search warrant." Swan v. United States, 54 App. D. C. 100, 295 F. 921. There was testimony tending to show that Brown was in control of the premises; that the marked money which had been given to Mingo was found in his possession; that Mingo actually bet with Brown and received from him a numbered slip in recognition of the bet. This was enough to justify the introduction of these slips.

■ Counsel for defendant submitted to the court certain prayers containing elementary propositions of law. While the record states that these prayers were disallowed, the court's charge is not before us, nor does it appear that any exception was taken to the charge. In such circumstances, "this court is bound to assume that the charge fully and correctly instructed the jury upon the law of the case." Harrod v. United States, 58 App. D. C. 254, 255, 29 F.(2d) 454, 455.

■ One point remains. Motion for a new trial was filed based upon an affidavit of the defendant to the effect that since the trial he had discovered that witness Mingo had been convicted of bigamy and served a term in the penitentiary. The trial court considered this motion, and, in the exercise of its discretion, denied it. We cannot say that there was any abuse of discretion. Had the fact of Mingo's conviction been known, it would have affected only the weight of his testimony, which, as already disclosed, was corroborated.

Judgment is affirmed.

Affirmed.