## GAGE v. UNITED STATES.
### No. 11532.

Circuit Court of Appeals, Ninth Circuit.

April 7, 1948.

Rehearing Denied May 24, 1948.

Joseph J. Cummins and David H. Paltun, both of Los Angeles, Cal., for appellant.

James M. Carter, U.S. Atty., Ernest A. Tolin, Chief Asst. U. S. Atty., and Norman W. Neukom, Asst. U. S. Atty., all of Los Angeles, Cal., for appellee.

Before MATHEWS, BONE, and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellant was convicted on two counts charging violation of the Federal Bribery Statute, 18 U.S.C.A. § 207. It was charged that he, while employed by the Veterans' Administration, solicited and received a bribe with the intention of having his official decisions and conduct influenced thereby.

Appellant, specializing as an orthopedic physician and surgeon, was employed by the Veteran's Administration at Sawtelle in his professional capacity, from August 1946 to October 1946. Appellant's duties required him to prescribe orthopedic and corrective footwear for veterans. One Tomsone, operating as Hubert's Orthopedic Service, held a contract with the Veterans' Administration for the furnishing of specialized shoes and orthopedic devices. It was from Tomsone that appellant was alleged to have solicited and received the bribe.

At the trial Tomsone testified, in substance, as follows: During the week of Labor Day, September 1946, he had a conversation with appellant in the course of which appellant made inquiries as to Tomsone's business. The conversation terminated in strained feelings. On the following Tuesday, Tomsone again met appellant who informed him that he wanted to talk to him (Tomsone) concerning something important, and stated that "he had to make some money somehow." Subsequently, Tomsone and appellant engaged in a conversation wherein appellant stated that he needed some money to pay off some of the persons who might help him get a physician's license for the State of California, and that if Tomsone would "play ball," appellant would see to it that Tomsone received more business. Appellant suggested that Tomsone come to his (appellant's) apartment to discuss a proposition "for us to make some money on the side so that he could be in Sawtelle to prescribe shoes and he wanted me to give up my contract so that he could reopen a new bid under an assumed name as a professional shoe service instead of orthopedic service, and he told me he would like to have me as a silent partner. I would be doing all the work in the shop and he will prescribe all the work on the inside so that we could make a lot of money." Appellant handed Tomsone a small piece of paper with his

address written thereon in appellant's handwriting. This writing was received in evidence. Tomsone testified that he reported the matter to Dr. Long and Mr. Duncan, officials of the Veterans' Administration. His testimony on this point was corroborated by Long and Duncan. At a later date, appellant met Tomsone by appointment and they proceeded to a restaurant in Santa Monica. Mr. Duncan, who had been advised by Tomsone of the meeting witnessed the meeting and followed them to the restaurant. Tomsone testified that appellant, while they were seated in the restaurant, solicited payment by Tomsone of $100 a week. In return the orders for shoes to be given Tomsone were to be immediately increased. The following day, appellant made a similar solicitation, stipulating that he be given the money "in cash."

On or about October 18, 1946, appellant accompanied Tomsone to the parking lot near the Veteran's Hospital in Sawtelle and received from Tomsone $100 in currency, which had been previously marked by Tomsone's wife and checked by agents of the Federal Bureau of Investigation. Appellant was apprehended a short time later in his office by said Federal Agents. They found the marked currency in appellant's possession. Davis, one of said agents, testified that as the money was taken from appellant, he (appellant) stated: "I expected this; I knew this would happen."

Appellant's defense was that he was endeavoring to entrap Tomsone and took the money in furtherance of that purpose. He testified that he had indicated dissatisfaction with Tomsone's work to his superiors; that Tomsone had attempted to bribe him; that he took the $100 from Tomsone with the intention of turning it over to his superiors. Appellant further testified that he had complained of Tomsone's work to Dr. Long, and other doctors at the hospital. Three doctors, Dr. Kane, Dr. Levine and Dr. Mazet, called by appellant, testified that on numerous occasions appellant had complained of Tomsone's work. Evidence was also introduced to show that appellant had suggested that veterans be given the choice of more than one contractor for orthopedic devices. A number of character witnesses were called and testified on behalf of appel-lant. Evidence was also introduced for the purpose of impeaching the character of Tomsone for truth and honesty.

■■ It is contended that the evidence does not sustain the verdict. Appellant, in argument here, stressed the claim that the conviction rested substantially on the testimony of Tomsone, and that while appellant's reputation was exemplary, a number of witnesses testified that they would not believe Tomsone's statements made under oath. The credibility of the witnesses was a matter for the jury. They evidently resolved the conflicting evidence in favor of the prosecution. There was evidence before the jury, competent and substantial, fairly tending to support the verdict. Hemphill v. United States, 9 Cir., 120 F.2d 115; Yoffe v. United States, 1 Cir., 153 F.2d 570.

■ Subsequent to the trial in the District Court, counsel, other than the one who tried the case, was retained by appellant. A motion for a new trial was filed, one of the grounds being newly discovered evidence. In support of the motion for a new trial an affidavit sworn to by appellant's counsel was introduced, to which was attached as exhibits transcriptions of telephone conversations alleged to have been held between counsel for appellant and Drs. Kane, Strachan, Levine, Hurst, Kuhn and Colonel Strayder. These conversations were recorded by means of attaching to a telephone a sound transcriber. Subsequent to the introduction of said affidavit and transcriptions, each person referred to therein was interviewed by an agent of the Federal Bureau of Investigation. The affidavit of said agent was filed in opposition to the motion for a new trial. Of the six individuals whose conversations with counsel for appellant were recorded, three testified at the trial. No showing is made that the remaining three were not available and could not be summoned as witnesses at the trial. Neither the affidavit of counsel for appellant, nor the attached exhibits, demonstrate that a witness at the trial had perjured himself, or that a named witness would, at a new trial, give testimony at variance with that given at the trial. The exhibit contained a series of questions and

answers indicating that appellant had often been heard to complain of Tomsone's work; that on occasion he had been heard to state that on one of these days there would be "hell popping" or "fur flying." Nothing in the exhibits indicates that appellant had at any time stated that Tomsone was endeavoring to bribe him. In short, the contents of the exhibits were entirely consistent with the testimony given at the trial, being of the same nature as the evidence produced in support of his defense that he was trying to entrap Tomsone. Granting the alleged statements contained in the exhibits could be produced they are not of the kind which would warrant the granting of a new trial. It would be merely cumulative and not of such nature as would probably change the result. Evans v. United States, 10 Cir., 122 F.2d 461, certiorari denied 314 U.S. 698, 62 S.Ct. 478, 86 L.Ed. 558.

■■ In further support of the motion for a new trial, counsel for appellant included in his affidavit a statement that Tomsone had twice been convicted of theft. No certified copies of the record of such convictions were attached, nor does the affidavit indicate whether the convictions were for felonies or misdemeanors. Apart from this, however, Tomsone was never asked during the trial whether he had been convicted of a crime. Hence, no showing of perjury on the part of a witness is contained in the evidence alleged to have been discovered subsequent to the trial. Martin v. United States, 5 Cir., 17 F.2d 973. The mere discovery of additional impeaching evidence does not meet the requisites for a new trial.

■ Motions for new trials being addressed to the sound discretion of the trial court, and it being manifest the trial court did not act arbitrarily or capriciously nor upon any erroneous concept of the law, the appellate court may not substitute its judgment for that of the trial judge. United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562.

■ Appellant complains of the action of the trial court in striking the testimony of a witness called by appellant to impeach the character of Tomsone on the ground that it was too remote. The wit-

ness, having been asked whether he was familiar with Tomsone's general reputation for truth and honesty in the community in which he resided, had replied, "Pretty rotten." On cross-examination, it appeared that the witness had heard nothing of or concerning Tomsone, nor had he talked to or seen him since 1934, twelve years prior to the time of trial. The admissibility of the impeaching testimony called for the exercise of the trial court's discretion; the striking of the testimony here complained of did not constitute an abuse thereof. Teese v. Huntingdon, 64 U.S. 2, 23 How. 2, 16 L.Ed. 479; 70 Corp.Jur., § 1041, pp. 828–830.

■ For the first time appellant urged on appeal that the prosecuting attorney had been guilty of prejudicial misconduct in his closing argument to the jury by stating, in reviewing the facts, that appellant had returned to and remained in his office for fifteen minutes after accepting the bribe without turning it over to his superiors. Appellant argues that the record indicates that a much shorter period elapsed between appellant's return to his office with the marked bills and his apprehension by the agents of the Federal Bureau of Investigation. It is here contended that substantial prejudice resulted, in view of the theory of the defense that appellant had accepted the bribe with the intention of turning it over to his superiors and thus entrapping Tomsone. Insofar as any inaccuracy existed in the prosecutor's statement to the jury, it appears to have been unintentional. No objection was made thereto in the trial court and no assignment thereof as error is made on this appeal.

The alleged error is not such as could have so seriously prejudiced the rights of appellant as to require us to take notice of it in the absence of objection or assignment of error, and is of the class that in the absence of an objection or assignment the alleged error will not ordinarily be reviewed on appeal. Edgmon v. United States, 10 Cir., 87 F.2d 13; Meadows v. United States, 65 App.D.C. 275, 82 F.2d 881; Lindsey v. United States, 77 U.S.App.D.C. 1, 133 F.2d 368; Thomas v. District of Columbia, 67 App.D.C. 179, 90 F.2d 424. The jury heard the evidence. We think they should be credited with sufficient intelligence to as-

sume they did not disabuse their minds of the sworn testimony before them on this point and unhesitatingly accept in its stead the inadvertent misstatement of counsel.

Judgment affirmed.