UNITED STATES of America, Appellee,

v.

Herman BREWSTER, Defendant-Appellant.

No. 283, Docket 23793.

United States Court of Appeals Second Circuit.

Argued March 7, 1956.

Decided March 22, 1956.

**214**

Kevie Frankel, New York City (Bernard Jay Coven, New York City, of counsel), for defendant-appellant.

Paul W. Williams, U. S. Atty. for Southern Dist. of New York, New York City (Whitney North Seymour, Jr., Asst. U. S. Atty., New York City, of counsel), for appellee.

Before CLARK, Chief Judge, MEDINA, Circuit Judge, and GALSTON, District Judge.

GALSTON, District Judge.

The defendant was convicted under an indictment which charged him with violation of 26 U.S.C.A. § 145(b) relating to income tax evasion.

Brewster was employed as a buyer by a used car concern known as the F. & W. Auto Storage Corporation. This business was operated by Jacob Fenton, a brother-in-law of the defendant. He was so employed from the early part of 1946 until the end of 1947.

The record discloses that in 1947 the corporation contracted for the purchase of five hundred of such cars from the Jean S. Willis Used Car Company. Defendant's income, in addition to his salary, included "kickbacks" which he received from the Willis firm. These "kickbacks" to Brewster were paid in cash, and in 1947 amounted to $27,925. None of that sum was reported on his income tax return for the year 1947.

In concealing the unreported income he set up a bank account in the name of Charles Fischer. During 1947 he deposited in that account $6,100. He also had a brokerage account, and in 1947 deposited therein the sum of $14,238.08.

The Willis firm consisted of Frank Willis and Louis Griswold, Sr. Louis Griswold, Jr. assisted his father with the bookkeeping. The testimony of Louis Griswold, Jr. bore heavily on the transactions with the defendant. The bookkeeping system was described by young Griswold, and an important element in the case consisted of the manner in which the sales of the cars were recorded. When a car was sold an envelope was marked to show to whom the car was sold, the sales price and any expenses incurred. Of vital importance

was the inclusion in these expenses of the "kickbacks" paid to the defendant. Young Griswold overheard conversations on their premises in 1947 between his father and Brewster wherein the prices of cars were mentioned. The defendant would then add on to those prices his so-called commissions. Griswold, Sr. instructed his son how to bill the cars to Brewster's employer. Young Griswold also testified that he himself had delivered cash to the defendant pursuant to his father's instructions, and that he was also present when Willis gave cash to Brewster.

The defendant contends that the admission of the envelopes in evidence was improper; that it was error for the trial court to permit a "fishing expedition" into the possibility of the commission by the defendant of other offenses not connected with the crime charged in the indictment; and that the defendant was prejudiced by the testimony of Joseph McQuade, a Special Agent of the Bureau of Internal Revenue.

■ The envelopes and the contents thereof of the Jean S. Willis Used Car Company were properly admitted in evidence as business records. 28 U.S.C. 1732.

Secondly, there was no "fishing expedition."

The defendant in his direct examination denied ever having received any "kickbacks" from the Willis firm. He said that during the years 1945 and 1946 he had carried between $5,000 and $7,000 in cash in his pocket, and that when he went to work for the F. & W. Auto Storage Corporation in 1946 he found it was not necessary to use this cash in his work, and so decided to invest it in the stock market. Such testimony on the part of the defendant himself justified a vigorous cross-examination, during which he said that as of January 1, 1946 his total assets had been approximately $10,000, all in cash. None of this had been accumulated from 1942 to the time he took his position with the F. & W. Auto Storage Corporation. He testified that he had $10,000 in cash at the time that he went into the army in 1942, and that he left about $3,000 of this in a shoe box in a closet in his stepmother's house, and that it remained there until 1944. $7,000 was left with a sister, in wrapping paper. On discharge from the army he received $20 a week for fifty-two weeks of unemployment.

■ The jury had reasonable ground to believe that there was no secret nest egg over the years such as Brewster had described, but rather that the "kickbacks" explained his accumulation of funds. There were no errors in the admission of testimony developed in his cross-examination concerning either his assets or the introduction of his 1946 income tax return. Admissibility of evidence tending to show income tax evasion in 1946 was entirely proper. Evidence as to prior years was relevant on the issue of intent and purpose. See United States v. Herskovitz, 2 Cir., 209 F.2d 881.

The defendant also contends that the testimony of McQuade, who testified as to documentary exhibits and admissions made by the defendant, should not have been admitted, but clearly his testimony bore on issues involved. McQuade's calculations based on documents produced were properly admitted in evidence.

■ The proof establishing the defendant's guilt is overwhelming, and the judgment of conviction was justified.

Following the conviction, Brewster made a motion for a new trial based on allegedly newly discovered evidence. The new evidence related to a charge of perjury committed by Willis during the trial. Willis denied that he had ever been convicted of a crime. The motion for a new trial revealed that in 1919 he had been convicted on a charge of petty larceny. In Willis's affidavit submitted by the Government in opposing defendant's motion, he set forth that when he was discharged from the army he went

to work at the army base in Brooklyn, and "one day I slipped a single pair of shoe soles, which I found lying around, into my pocket." As he left the base he was searched and arrested, taken before the Court of Special Sessions and charged with petty larceny, was convicted and received a suspended sentence.

■ It is unreasonable to believe that with the evidence adduced by the Government through the testimony of Griswold, Jr., the jury would have reached a different verdict than that which it rendered, for the newly discovered evidence, a minor misdemeanor thirty-six years old, could hardly have led the jury to a different conclusion.

Judge Wright, in his opinion denying the motion for a new trial, correctly interprets the law. He wrote:

"In the last analysis, however, a decision on the application must be based on a consideration of all the circumstances of the case. The court, after such consideration, must answer the question, 'Is there a real danger of a miscarriage of justice if this application is not granted?' Here the answer to that question must be in the negative."

■ It may be added that the trial judge followed the general rule that impeaching evidence is not generally a sufficient basis for a new trial. See Gage v. United States, 9 Cir., 167 F.2d 122; Brown v. United States, 59 App. D.C. 57, 32 F.2d 953. See also United States v. On Lee, 2 Cir., 1953, 201 F.2d 722. For other cases supporting the denial of the motion see Thompson v. United States, 1951, 88 U.S.App.D.C. 235, 188 F.2d 652; Murphy v. United States, 1952, 91 U.S.App.D.C. 118, 198 F.2d 87.

In view of the foregoing it is not necessary to discuss the question whether due diligence had been exercised by the appellant in seeking the proffered new evidence. The judgment is affirmed, as is also the denial of a motion for a new trial.