**George E. SHIBLEY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 14465.**

United States Court of Appeals
Ninth Circuit.

March 19, 1956.

Rehearing Denied May 9, 1956.

Certiorari Denied Oct. 15, 1956.

See 77 S.Ct. 94.

Daniel G. Marshall, A. L. Wirin, Morris Lavine, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Manley J. Bowler, James R. Dooley, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, FEE and CHAMBERS, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

The indictment in this case was returned on June 25, 1953, against Shibley and Charles Raymond Thompson, and was in four counts. Count 1 charged violation of 18 U.S.C.A. §§ 7,[1] 13,[2] and California Penal Code §§ 459–460[3] namely, that Thompson entered a building on lands reserved for the exclusive use of the United States at El Toro Marine Air Station in Orange County, California, with intent to commit larceny therein. Shibley was charged with aiding and abetting Thompson in this offense. Count 2 set up a violation of 18 U.S.C.A. § 641,[4] in that appellant and Thompson stole and knowingly converted to their own use property of the United States valued in excess of $100.00. Count 3 charged the violation of 18 U.S.C.A. § 641, whereby Shibley and Thompson received, concealed and retained with intent to convert to their own use and gain property of the United States which the parties knew had theretofore been stolen from the United States, said property having a value in

1. "The term 'special maritime and territorial jurisdiction of the United States', as used in this title, includes:

* * * * *

"(3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building." 18 U.S.C.A. § 7.

2. "Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment." 18 U.S.C.A. § 13. This section was adopted June 25, 1948, while §§ 459 and 460 of the California Penal Code, as they appear in Note 3, infra, were in effect.

3. "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, railroad car, trailer coach as defined by the Vehicle Code, vehicle as defined by said code when the doors of such vehicle are locked, aircraft as defined by the Harbors and Navigation Code, mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary." California Penal Code § 459.

"1. Every burglary of an inhabited dwelling-house or building committed in the night-time, and every burglary, whether in the daytime or night-time, committed by a person armed with a deadly weapon, or who while in the commission of such burglary arms himself with a deadly weapon, or who while in the commission of such burglary assaults any person, is burglary of the first degree. * * *." California Penal Code, § 460.

4. "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

"Whoever receives, conceals, or retains the same with intent to convert it to his use or, gain, knowing it to have been embezzled, stolen, purloined or converted—

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

"The word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater." 18 U.S.C.A. § 641.

excess of $100.00. Count 4 charged a violation of the conspiracy statute, 18 U.S.C.A. § 371. This count charged that Shibley and Thompson conspired to (a) enter a building on lands reserved for the exclusive use of the United States with intent to commit larceny therein, in violation of 18 U.S.C.A. §§ 7, 13 and California Penal Code, §§ 459–460, (b) steal, purloin and knowingly convert to their own use property of the United States of a value in excess of $100.00, and (c) conceal and retain with intent to convert to their own use and gain certain property of the United States which had been stolen from the United States, as each defendant then and there well knew, said property valued in excess of $100.00.

Thompson entered a plea of guilty to Counts 1 and 4 of the indictment before trial, and Counts 2 and 3 were dismissed as to him. Count 2 was also dismissed as to Shibley before trial. The cause was tried before a jury with Hon. Ben Harrison presiding. The jury failed to return a verdict on Count 1 as to Shibley, but did find him guilty on Counts 3 and 4. The jury also found the property involved had a value of less than $100.00. This appeal is from the judgment of conviction entered against Shibley on the verdicts returned.

Shibley, a lawyer, was employed as counsel for one Bennette in a court-martial proceeding. Prior to the termination of the pre-trial investigation therein, and on August 26, 1952, Shibley wrote a letter to the Commandant of the Marine Corps, complaining of the method by which the court-martial was conducted at El Toro Marine Base. As a result of this incident and in connection therewith, a Court of Inquiry was convened at the Base, at which Shibley was summoned to testify. At these proceedings, Shibley was asked to detail the matters of which he had written the Commandant. He refused upon various grounds, the validity of which are not in question in this appeal. A copy of the official transcript of these proceedings is the subject matter of the crimes herein charged. A corporal in the Marine

Corps, working as a clerk-typist and court reporter, offered to help Shibley, and the latter said Thompson, the co-defendant, would contact the corporal. Thompson found out from the corporal where the completed transcript would be placed and by use of false identification cards entered the base and stole the transcript of the Court of Inquiry. Thompson had several photographic copies made, for which he paid $200.00, which he claimed he got from Shibley's secretary. Thompson testified that, at the direction of Shibley, he mailed the original to a news commentator in Washington, D.C., the copy to the attorney who represented Shibley at the trial and the negatives to Shibley himself. There was independent evidence of the mailing of these three parcels, as directed, and of the payment of $200.00 for the photographing. The main framework of the case was laid by the testimony of Thompson, the co-defendant. He testified that he talked with Shibley about the matter every day and acted under the direction of Shibley. There was considerable corroboration in the testimony of the corporal, the photographer, the postal inspector, and other witnesses.

This represents one of those point appeals where lawyers urge each of the incidents of a hard fought criminal trial in the hope that the cumulative effect will convince an appellate court that the trial was unfair and the trial judge partial to the government. At the outset, it may be said that, after a review of the record with the utmost care, this Court has come to the conclusion that the trial was fair and impartial. The cause was properly submitted to the jury for resolution of questions of fact involving direct and circumstantial evidence and depending upon the credibility which the jury chose to give to the witnesses, including the defendant.

The original brief of Shibley raises questions as to the validity of the judgment as follows: (a) No probative or substantial testimony in support of the judgment, so that the trial court erred in failing to grant motions for dismissal

of the indictment and for acquittal; (b) Error in denying new trial on the suggestion of newly discovered evidence; (c) Exclusion of evidence claimed to show motive; (d) Refused instructions and instructions given in reference to the right of Shibley in re a transcript of a Naval Court of Inquiry; and (e) Denial of a right to fair trial and due process of law in that the trial court coerced the jury into a verdict of guilty. These will be discussed in the order set up.

■ A review of the record as a whole does not convince this Court that injustice was done by the conviction of defendant on Counts 3 and 4. The only question is the presence of substantial evidence in the record from which the jury could reach the conclusions it did. There can be no doubt that such was the case here. There was substantial evidence from which the jury could conclude beyond a reasonable doubt that defendant received, concealed and retained, with intent to convert to his own use and gain, the transcript of the Court of Inquiry, property of the United States, which had been stolen therefrom as defendant well knew. There was substantial evidence of an unlawful agreement between Thompson and defendant to enter a building on lands reserved for the exclusive use of the United States, with intent to steal and convert to their own use property of the United States and thereafter to conceal and retain that property with intent to convert it to their own use and gain, then knowing it to have been stolen. There was unlawful concert of action toward the consummation of this criminal design, and several overt acts were committed in furtherance of the conspiracy. It is true the testimony of Thompson, as a co-conspirator and the chief actor, was necessary to give continuity to the circumstances and was the sole support of a considerable portion of the case for the prosecution. By attacking the credibility and competence of this witness in this Court, appellant seeks to vitiate the evi-

dentiary basis for the verdict of the jury.

■ In the briefs, appellant has tried to point up certain minor inconsistencies in the testimony of Thompson, as if this Court were concerned with credibility. Of course, we are not. Gage v. United States, 9 Cir., 167 F.2d 122, 124. This argument might have had weight with the jury, but it is out of place in an appellate brief. The jury apparently found Thompson credible or, at least, corroborated. And "where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916. Belated attack is made also upon the competence of Thompson to testify at all. This aspect is dealt with below.

The experienced trial judge ruled several times that the evidence was sufficient and refused to set aside the verdict or to grant a new trial. While this circumstance does not bind this Court, yet as the attitude of the trial judge was fair and impartial throughout and since he heard the evidence and observed the demeanor of the witnesses, including defendant, great weight must be accorded thereto.

■ A motion for new trial was made after verdict, based upon evidence which was claimed to be newly discovered. The trial court denied the motion. This is usually conclusive, as the only inquiry on the review of such a denial is whether or not there was a manifest abuse of discretion on the part of the trial judge. Rule 33, Federal Rules of Criminal Procedure, 18 U.S.C.A. Banks v. United States, 9 Cir., 147 F.2d 628, 629; Gage v. United States, 9 Cir., 167 F.2d 122, 125. The new witness, Yvonne Fuller, was living in the home of

defendant as a parolee to his wife from the Youth Authority, as a juvenile delinquent, at the time of the incidents related at the trial. Prior to the trial, the girl had given a statement to the government which tended to corroborate the other evidence in the case of the government. After the trial, she gave another statement to the attorneys for defendant, which apparently corroborated the testimony of Shibley and contradicted that of Thompson in some respect. This is claimed to be newly discovered evidence. Still a third statement, again inconsistent in certain particulars, was obtained by the government before the hearing on the motion. While confined in an institution for juvenile delinquents, she stated that she would not testify against George Shibley. It is apparent that counsel for defendant knew, during the trial, of the situation relating to this girl and the fact that she had been with Thompson the night on which he obtained the transcript and that she was therefore probably aware of some of the incidents in controversy. In the face of this, it is contended that the information possessed by this person was not within the discovery of one employing reasonable diligence. This is, of course, open to grave doubt, and in any event it can be said that, considering the circumstances surrounding the girl, her testimony could not be "of such a nature that it probably would produce an acquittal." Brandon v. United States, 9 Cir., 190 F.2d 175, 178. This person was available to defendant so that he could have availed himself of the opportunity to interview her. Then, if he had desired to use her at the trial, no objection could have been made. But it is obvious enough from the record that neither defendant nor the government wished to vouch for the credibility of this witness. Thus unwilling, counsel for defendant apparently expected the government to call the Fuller girl to the witness stand. But the government did not. Defendant now assigns the failure of the government to use the Fuller girl as suppression of evidence. However, it does not come within any such principle. The government was not bound to call this witness and thereby proclaim her credibility. If, as defendant claims, she was possessed of information favorable to his contentions, he should have called her. His marked reluctance to do so is illuminating. One cannot speculate upon failure to call a witness and thereafter present such testimony as newly discovered.

■ Defendant offered testimony by his counsel in the present case that the lawyer had advised Shibley that the latter had a legal right to obtain a transcript of the proceedings before the Court of Inquiry and that the lawyer had examined a portion of the transcript in the office of the United States Attorney. It is also contended that it was improper to exclude evidence that the transcript of a Court of Inquiry is always available to an interested person, and to instruct the jury to that effect. However, defendant was allowed to testify as to his belief upon these matters. Therefore, so far as motive was concerned, the proof was before the jury. His belief, and not the facts or the advice, was the important matter. Also, on the matter of his state of mind, defendant testified that he had knowledge of the fact that the transcript of his testimony before the Court of Inquiry had been forwarded to the office of the United States Attorney. He stated he knew on December 12 the transcript had been forwarded. He also testified that the record had been made available to his attorney for inspection because the latter had told him so on either December 15 or 16. Of course, this was sufficient to establish his point if the jury believed him. But the jury might have concluded, to the contrary, that he wished the transcript to be forwarded to the eastern news commentator before he had his copy, so that he could not be implicated personally in its publication. Shibley's interest in having the transcript used by a nationally known news commentator was obvious. Indeed, the only other persons who might plausibly have been thought to have had any inter-

est therein were the news commentator and his agents. This was not concealed from the jury, but seems to have been carefully exploited. In any event, there was no error in the exclusions.

■ The trial court gave an instruction as to the right to have the transcript of the Court of Inquiry [5] and refused certain others requested by defendant. The instruction given was more than fair, and the right of the court to use its own language instead of that of defendant cannot be controverted. Certainly the trial court gave defendant ample opportunity to present this matter to the jury, and the instruction given went beyond the required limits in presenting the theory of defendant. That the jury did not accept it is no concern of an appellate court. Motive was not an essential element of the proof of the government. Even in the absence of any conceivable motive, defendant could still be convicted, such absence being only the foundation of a jury argument.

■ The court struck certain testimony with regard to the bad reputation of the witness Thompson. Since this witness clearly stated he was testifying to a time after finding of the indictment, the ruling was within the discretion of the trial court.[6]

The trial court refused to reprimand counsel for the government for an argument that thefts from government reservations might involve a threat to our national security. The fact is so obvious that the prosecutor might as well have let the jury draw the conclusion for themselves. There was no objection at the time. The trial court found no prejudice. On the record, it seems legitimate

argument. It is highly persuasive here that the jury were conscientious and not swayed by prejudice against defendant (1) because they did not come to any agreement on Count 1, and (2) because they decided the value of the property was less than $100.00, contrary to the contention of the government.

There is objection that the trial court coerced the jury by giving an instruction which has become almost stock under the circumstances.[7] In this case, a careful review of the seven volumes of transcript seems to indicate that no harm was done in this instance. There was no objection by defendant either in or out of the presence of the jury. Apparently the jury were able to come to an agreement on all counts except No. 1. The only effect of the instruction seems to have been that they returned a verdict on the other counts and left the one undecided.

■ There is also a contention that the sentence of three years imposed under the conspiracy count is illegal. It is said that 18 U.S.C.A. § 641 makes the knowing receipt, concealment and retention of stolen government property of a value less than $100.00 a misdemeanor only,[8] and a conspiracy with such a misdemeanor as its sole object is also a misdemeanor, punishable by imprisonment for not more than one year.[9] This, of course, ignores the fact that the conspiracy here charged and proved to the satisfaction of the jury contemplated the commission of several offenses. But the conspiracy is the crime, not the substantive offenses which may or may not result therefrom. The fact that the jury did not pass upon the charges that Shibley actually aided and abetted in the fel-

---

5. "The transcript of the Court of Inquiry proceedings affecting the Defendant Shibley, a copy of which defendant would eventually have been entitled to receive."

6. Wigmore on Evidence (3d Ed.), Vol. V, § 1618.

7. Allis v. United States, C.C., 73 F. 165, 182, affirmed 155 U.S. 117, 15 S.Ct. 36, 39 L.Ed. 91; Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed.

528. See, Kawakita v. United States, 9 Cir., 190 F.2d 506, 521–528, affirmed 342 U.S. 932, 72 S.Ct. 378, 96 L.Ed. 694.

8. Footnote 4, supra.

9. "* * * If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor." 18 U.S.C.A. § 371.

ony of burglary, confessed by his co-conspirator, so as to make him a principal in the commission of that crime, 18 U.S.C.A. § 2(a), does not relieve him from responsibility as a participant in a conspiracy looking to the commission of that and other crimes. United States v. Anderson, 9 Cir., 31 F.2d 436, 437; United States v. Dewinsky, D.C., 41 F.Supp. 149, 155.

On the day of argument in this Court, a memorandum of additional points was served after another counsel had been added to the battery. These points are: (1) The court failed, upon request of defendant, to poll the jury as to Count 4; (2) The conspiracy count combined a charge of the three substantive offenses in one charge; (3) Count 4 charged an offense under the "Assimilative Crimes Statute," 18 U.S.C.A. § 13, which is unconstitutional; (4) The competency of Thompson as a witness was affected by an adjudication of insanity, and the trial court should not have permitted him to testify; (5) Since what was received by Shibley was the negative of a photograph of the transcript of the Court of Inquiry, there could not be a conspiracy to "receive, conceal and convert" the original; (6) A discharge of a juror without a record of the consent of defendant thereto constituted double jeopardy; (7) Testimony contrary to "proven and uncontroverted physical facts" must be rejected; and (8) Testimony of a witness as to conversations with an alleged co-conspirator outside the presence of defendant should have been excluded. The objection to the method of raising these points is, of course, well taken and has been sustain-ed. But, in order to demonstrate the lack of merit therein, this Court will pass categorically upon each.

The reference to the polling of the jury as to Count 4 is apparently the result of a clerical error which the reporter has now corrected. The point was raised by counsel who was not present at the trial. No objection was made at the time. No prejudice is apparent. A court has discretion as to how a jury should be polled.

It is said the conspiracy count is duplicitous. But two or more persons can enter into an unlawful agreement to commit three substantive crimes, either simultaneously or in succession.[10] It is claimed there could not be a conspiracy to commit larceny on a marine corps post, since this crime is defined under the "Assimilative Crimes Statute," which is unconstitutional.[11] But convictions of substantive crimes under this statute have been upheld.[12] A conspiracy to carry off government property, by breaking and entering a government building, and convert it to one's own use would be punishable as a felony irrespective of the Assimilative Crimes Statute.

It is objected in the additional points filed after argument that the testimony of Thompson was adversely affected by the fact that he had once been adjudicated insane and that the trial court should not have permitted him to testify. Of course, the rule of law is quite contrary,[13] and there was no error. The weight and credibility of his testimony was for the jury. Without question, there could be a conspiracy to "re-

---

10. "The conspiracy is the crime, and that is one, however diverse its objects." Frohwerk v. United States, 249 U.S. 204, 210, 39 S.Ct. 249, 252, 63 L.Ed. 561. See, Nye & Nissen v. United States, 9 Cir., 168 F.2d 846, 850, affirmed 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919.

11. 18 U.S.C.A. § 13. See Footnote 2, above.

12. Dunaway v. United States, 10 Cir., 170 F.2d 11, burglary; United States v. Gill,

7 Cir., 204 F.2d 740, assault; Kite v. United States, 4 Cir., 216 F.2d 802, uttering checks on insufficient funds; United States v. Titus, D.C., 64 F.Supp. 55, embezzlement.

13. District of Columbia v. Armes, 107 U.S. 519, 521–522, 2 S.Ct. 840, 27 L.Ed. 618; Ross v. United States, 7 Cir., 93 F.2d 950, 951–952; In re Paul, D.C., 18 F.2d 448; Wigmore on Evidence (3d Ed.), Vol. II, §§ 492–501.

ceive, conceal and convert" the original transcript, even if the conspirators were unable to get either original or copy. The crime planned need not be consummated if an alleged overt act has been done in furtherance of and to carry out the illegal design. In any event, there was evidence that the original transcript was under the essential control and dominion of appellant from the moment it was presented to him, after the theft, by Thompson.[14]

The record shows a juror talked to the wife of one of the counsel for the United States. The court offered to discharge the juror and substitute an alternate. Rule 24(c), Federal Rules of Criminal Procedure. Counsel for defendant agreed, and the substitution was made. This action was not prejudicial to defendant and was not error. In any event, it was waived by expressed consent of counsel for defendant, as well as by the silence of defendant and his failure to object, although he is a lawyer. The suggestion that "testimony contrary to proven and uncontroverted physical facts" must be rejected is so vague and meaningless that it may be safely disregarded.

■ Finally, it was proper, after the prima facie showing of conspiracy and concert of action, to admit the testimony concerning conversations of a witness with a co-conspirator outside the presence of the defendant Shibley. Barnett v. United States, 9 Cir., 171 F.2d 721, 722.

Of course, this case would not be here if the jury had taken the viewpoint of defendant. The refusal of the jury to believe Shibley is the heart of this appeal, since, as we have seen, there certainly was no error of law. A reversal of this cause by this Court would be a completely unwarranted invasion of the province of the trial jury.

Affirmed.

---

14. Wharton's Criminal Law (12th Ed.), Vol. II, § 1238; United States v. Le Fanti, D.C., 255 F. 210, 212, affirmed Le Fanti v. United States, 3 Cir., 259 F. 460.