ALEXANDER *v.* STATE
(Two Appeals in One Record)
[No. 16, October Term, 1951.]

*Decided November 1, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Malcolm J. Coan,* with whom was *Paul B. Mules* on the brief, for the appellant.

*Robert M. Thomas, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *Charles E. Orth, Jr., Assistant State's Attorney,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant, tried by the court without a jury, was convicted in the Criminal Court of Baltimore of bookmaking, keeping a place for betting or bookmaking, and lottery and keeping or permitting the use of a place for selling lottery tickets. He was sentenced to fine and imprisonment. The sole question raised is as to the sufficiency of the evidence, or, more precisely, whether the verdicts of the trial judge were clearly erroneous.

On January 27, 1951 at about 1:15 P.M., Captain Emerson and his officers, armed with a search warrant, entered the second floor of 1704 Eastern Avenue, the telephone of which was in the name of an alleged political club. As he approached the building he saw a man in the street making signals to someone in an open window of the second floor. To gain admittance he had to pass three doors, one of which could not be opened from the outside. He found ten men in the premises, around a desk on top of which was a blue notebook, pencils and scratch sheets. There were charred and burning papers in the coal stove. Alexander acted as spokesman for the group. Captain Emerson testified that on previous occasions Alexander "acted as the boss always". On Alexander's person there was found $3,524.06 in cash, a scratch sheet, a red book with telephone numbers, and a paper containing betting notations. In the desk there was found a receipted bill in the appellant's name for automobile repairs, with a notation in pencil of the telephone number of the premises. Alexander accepted from Captain Emerson and placed in his pocket certain coins

taken from the desk. A key found in the desk opened a cupboard in the wall.

The telephone rang repeatedly and Captain Emerson answered it, taking bets from unknown persons on both numbers and horses, including one bet on a horse running at Hialeah on that day. The callers asked for "Melvin" or "Melvin Alexander", and Captain Emerson told them "This is Melvin" before taking the bets. On the premises there was a television set so arranged that it could be switched to teleflash, over which race descriptions were received from a private wire connected to the World Wide News Company. The latter company paid for the service, but the manager testified that the company received a rental of $50.00 a week paid in cash by an unidentified messenger.

The appellant's sole contention appears to be that there is no credible testimony tending to show that he made a book or sold numbers on the day in question. He does not suggest that the evidence does not support a finding that the premises were used for gambling. In *Courtney v. State,* 187 Md. 1, 5, 48 A. 2d 430, 432, we held that bets called in during a raid are admissible as a part of the *res gestae,* to show that the "place in question was a gambling place and that some or all of the persons found therein were engaged in taking bets in violation of law". For that purpose it is unnecessary to identify the caller. Whether the testimony that the caller asked for "Melvin" would be sufficient, standing alone, to involve the appellant, we need not decide, for there was abundant evidence to identify Alexander as a participant in the offense, if not the principal. Cf. 2 *Wharton, Criminal Law* (12th ed.) § 1739; *Brown v. United States,* 32 F. 2d 953. See also *Colie v. State,* 193 Md. 608, 612-613, 69 A. 2d 497, 499; *Lambert v. State,* 196 Md. 57, 69-70, 75 A. 2d 327, 332; *Delnegro v. State,* 198 Md. 80, 87, 81 A. 2d 241, 245. Without laboring the point, it is sufficient to say that we think the verdicts of the trial judge were fully supported by the evidence.

*Judgments affirmed, with costs.*