**George O. MILLER, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 80–100.**

District of Columbia Court of Appeals.

Argued Sept. 25, 1980.

Decided March 2, 1982.

E. Edward Bruce, Washington, D. C., appointed by the court, for appellant.

H. Lowell Brown, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, Michael W. Farrell, and Carol E. Bruce, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before KELLY and FERREN, Associate Judges, and YEAGLEY, Associate Judge, Retired.

YEAGLEY, Associate Judge, Retired:

Appellant challenges his conviction by a jury on one count of armed robbery under D.C.Code 1973, §§ 22–2901, –3202. The court imposed a sentence of 30 months to 20 years, to run concurrently with a sentence being served in the State of Maryland.

He assigns as error numerous statements made by the Assistant United States Attorney during closing argument.[1] Contending that these statements constituted grave prosecutorial misconduct, appellant asserts that his right to a fair trial was so substantially impaired that he is entitled to a new trial.[2]

The government concedes in its brief that the prosecutor's remarks concerning appellant's alibi witnesses were indeed improper. Accordingly, we need only decide the issue of whether these statements, when considered against the evidence adduced at trial and any curative measures by the trial court, were so prejudicial as to constitute a deprivation of appellant's right to a fair trial that the conviction should be set aside and a new trial granted.

We agree with the contention of appellant. The prosecutor's remarks, when viewed in totality, may well have had such a cumulative effect on the jury as to place appellant's conviction in question.

---

1. Appellant attacks the government's rebuttal argument as well. References throughout this opinion to "closing argument" also include the rebuttal, unless specifically stated otherwise.

2. Appellant also asserts that the prosecutor impermissibly implied to the jury that alibi defense witnesses had a duty to come forward to the police or grand jury. We do not reach that issue.

## I

The government's key witness, Burnice D. Mason, testified that on the evening of January 24, 1979, at about 6:15 p. m., appellant approached her and asked if she was waiting for the bus. After replying in the affirmative and feeling apprehensive, she walked out into the street to see if the bus was coming. Upon turning toward the curb, she saw that appellant had a pistol pointed at her. He snatched her pocketbook and ran.

The description she gave to police just after the incident, was that the robber was a black male, around 19 or 20 years old, six feet tall and thin, wearing blue jeans, a brown skull cap, and a green jacket.[3]

Two days later Ms. Mason spotted appellant while he was playing basketball. She told her companion, James Williams, that he (appellant) was the person who had robbed her. While Mr. Williams kept an eye on appellant, she reported this to police. As a result, appellant was arrested at the basketball court.

At trial the prosecutor relied solely on Ms. Mason's identification of appellant as the man who robbed her. All other government witnesses,[4] including Mr. Williams, testified to the facts surrounding the arrest or the initial complaint of the robbery.

Asserting alibi as the sole defense, appellant produced two witnesses who testified that on the evening in question appellant had been in their company. The first, Wayne Taylor, testified that he, Lorenzo Ferebee, and Kevin Evans, picked appellant up from his home around 4:30 or 4:45 p. m. on January 24, 1979. They dropped Ferebee off and picked up Yul Travers. Mr. Taylor traced the group's activities, stating that appellant had not left his company until appellant was taken home at approximately midnight.

On re-cross examination, the prosecutor, through permissible avenues of impeachment, brought out testimonial inconsistencies with a written statement Mr. Taylor had given a defense investigator two months after the incident. Counsel went on to ask, "Isn't it a fact, Mr. Taylor, that when you spoke with the investigator, you hadn't had time to get your story together with your friend?" To that, the witness answered, "no." Counsel later asked Taylor if he and his friend got together, prior to their appearance in court, and developed a "good tight alibi." Again the witness responded, "no."

The second alibi witness, Yul A. Travers, testified to essentially the same facts as Taylor: He said that he, along with appellant and others, spent the evening of January 24, 1979, together. Once more, the government's counsel, on cross-examination, alluded to a concerted effort to fabricate the testimony.

At the outset of the closing argument, government counsel compared Ms. Mason's experience at the bus stop to that of so many others in this city. "They get robbed." Counsel then moved on to note that the robbery in the instant case is of the "type . . . we have seen too many times in this city and other cities."

Later in her summation, the prosecutor labeled Mr. Taylor's testimony as "false." She added that "[i]t was the type of alibi that would be easily put together, easy for a group of people to get together and agree upon." Moreover, she suggested to the jury that the inconsistencies in Mr. Taylor's testimony resulted from the fact that he had not "gotten the story together yet, so he told [the investigator] something that was what they had tentatively agreed to be the scenario for that night . . . ."

Next, counsel characterized a portion of the second alibi witness' testimony as "just outright perjury." The prosecutor ventured so far as to suggest that the witnesses' mistake was "that they did not sit down and try to come up with more information that would be pat." Finally, the prosecutor argued during rebuttal that alibi is a dirty word when "a group of friends . . . come in

---

3. The witness made an in-court identification, stating that appellant was the man who approached her.

4. The government also produced the arresting officer, William Vaughn, and the officer who responded to the initial call.

and lie for you ... under oath .... You should be insulted by that."

Defense counsel objected to these statements and moved for a new trial at the end of the government's closing argument, and again at the close of rebuttal. Both were denied.

## II

In instances where this court has been asked to find prosecutorial misconduct and then determine whether that conduct warrants a new trial, the basic issue has been whether the misconduct was of such an egregious nature as to substantially prejudice appellant's constitutionally protected right to a fair trial. A survey of cases dealing with prosecutorial misconduct reveals that this court has consistently disapproved of tactics like those recited above.

■ The applicable test was enunciated in *Villacres v. United States*, D.C.App., 357 A.2d 423 (1976). There, appellant challenged his conviction for second-degree murder, asserting that the prosecutor made various misstatements during closing argument which could not "be excused as an honest misunderstanding of the substance of previous testimony because of haste or confusion." *Id.* at 427. We held that "[t]he applicable test in this jurisdiction in determining whether prosecutorial misconduct infects a verdict is to balance, on the one hand, the gravity of the misconduct, its direct relationship to the issue of innocence or guilt, and the effect of specific corrective instructions by the trial court, if any, against the weight of the evidence of appellant's guilt." *Id.* at 428.

In *Jenkins v. United States*, D.C.App., 374 A.2d 581 (1977), the prosecutor, during closing argument, made remarks similar to those made in the case at bar. He characterized portions of appellant's testimony as "total outright fabrication." *Id.* at 584. Later, he told the jury "... you should be outraged ... that [appellant] would attempt to perpetrate [a] fraud on you." *Id.*

Upon applying the *Villacres* test, we concluded that in light of the government's overwhelming evidence pointing to appellant's guilt, the statements in question, although clearly improper, did not significantly affect the jury's verdict.

In *Dyson v. United States*, D.C.App., 418 A.2d 127 (1980), we deemed it necessary to reverse appellant's conviction upon a finding of grave prosecutorial misconduct. There, appellant stood trial for second-degree burglary and destruction of private property. On appeal, appellant attacked closing argument statements made by the prosecutor, which included such characterizations as "falsehood," "not a grain of truth in this defense" and that the defense witnesses had "lied." *Id.* at 130. We held that the statements were fatal to the government's successful prosecution of the case because the statements were impermissible attacks on the veracity of the defense witnesses, which bore directly on the ultimate issue of guilt or innocence.

The United States Court of Appeals for the District of Columbia Circuit has frequently considered the propriety of prejudicial comments made by prosecutors during summation.[5] The prosecutor in *Stewart v. United States*, 101 U.S.App.D.C. 51, 54, 247 F.2d 42, 45 (1957), in referring to testimony by a defense witness, declared: " 'All that is, I must say, are statements which I believe constitute perjury. * * * It shows, I believe, the complete fabrication which they have submitted to you for your consideration.' "

While the circuit court was mindful of the fact that reversal would require appellant to stand trial a third time, it nonetheless held that the improper statements raised significant questions as to the prejudicial effect on the jury. That court ordered a new trial, concluding that the prosecutor had exceeded the bounds of permissible comments during summation of the evidence.

## III

■ Turning our attention to the case before us, we conclude that appellant's con-

---

5. *Taylor v. United States*, 134 U.S.App.D.C. 188, 413 F.2d 1095 (1969); *Harris v. United States*, 131 U.S.App.D.C. 105, 402 F.2d 656 (1968).

viction is tainted and that he is, therefore, entitled to a new trial. There was no evidence adduced at trial to support the prosecutor's contentions of perjury or lying under oath. Nothing was developed in the record, other than the prosecutor's suspicions as reflected in her questioning. "Since the prosecutor's statement[s] ... [were] not 'based on the evidence,' it was forbidden by the rule. It amounted to unsworn testimony by the prosecution." *Stewart, supra* at 55, 247 F.2d at 46. This court said recently: "We have admonished lawyers to eschew personal opinions in the course of arguments to juries ...." *Dyson, supra* at 130. Trial counsel, as a practicing attorney in this jurisdiction, is charged with the knowledge as well as the responsibility called forth by this prohibition.[6]

The evidence of guilt, as reflected in the record, was not overwhelming and could have led to a verdict for either party.[7] The government relied solely on the complainant's identification of appellant, the foundation for which occurred not only under anxious circumstances, but also at night. Appellant was not found with the fruits of the crime or the implements of the crime in his possession. To reach a verdict, the jury was compelled to consider credibility. Who the jury believed was crucial to the verdict. Consequently, the misconduct here bore directly on the question of innocence or guilt. It went straight to the issue of credibility.

The trial judge gave the usual general instruction to the effect that the prosecutor's arguments are not evidence. However, defense counsel did not request more specific remedial instructions and none were given.

We cannot accept the government's argument that the remarks were the result of

overzealous advocacy which had no unfair prejudicial effect on the jury. "The prosecutor may 'strike hard blows' but not 'foul'" blows.[8] It is clear from the record that the common theme throughout the government's case was the charge of fabrication on the part of appellant and his witnesses, but with no supportive evidence. The record does not support a conclusion that these statements were the result of inadvertence or haste. *Cf. Bates v. United States*, D.C.App., 403 A.2d 1159 (1979) (where the prosecutor's remark was but an isolated incident during the course of the entire trial).

Given the cumulative effect of the statements here, we cannot say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

*Reversed.*

---

**6.** Canon 7 of the Code on Professional Responsibility, as amended by this court, (DR 7–106(C)(4)) provides that "[A] lawyer shall not ... assert his personal opinion ... as to the ... credibility of a witness, ...."

**7.** The government admits in its brief that the evidence of appellant's guilt was not overwhelming.

**8.** *Taylor v. United States*, 134 U.S.App.D.C. 188, 189, 413 F.2d 1095, 1096 (1969), citing *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1934).