Bernard BASSIL, Appellant,

v.

UNITED STATES, Appellee.

No. 84–361.

District of Columbia Court of Appeals.

Argued April 24, 1986.
Decided Nov. 13, 1986.

Warren Anthony Fitch, Washington, D.C., for appellant.

Daniel S. Seikaly, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Judith Hetherton, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK, NEWMAN and BELSON, Associate Judges.

NEWMAN, Associate Judge:

Bassil asserts that his conviction for the second-degree murder while armed of Richard Petty and assault with intent to rob James Green while armed must be reversed. He urges that the trial court denied his right to present a defense, by ruling, that as a matter of law, evidence of the bad reputation for truth and veracity of a government witness was inadmissible.[1] We conclude that the trial court's ruling constitutes constitutional error but find it harmless beyond a reasonable doubt; we affirm.

## I

Viewed in its light most favorable to the government, the evidence established that Bassil placed a knife at James Green's throat while attempting to rob him and that shortly thereafter Bassil stabbed Richard Petty to death. Specifically, the evidence showed that Green and Petty had been friends for approximately fifteen years and they "always shacked in huts and different cars" together. In other words, they were among the homeless people of our city. On the evening in question, Green was asleep in a hut while Petty was asleep on a couch outside the hut. Green was awakened by the pressure of a knife against his throat and saw Bassil, whom he knew, rummaging through Green's belongings as if looking for something to steal. Bassil left the hut. Green attempted to find an iron pipe and a knife he kept in the hut for protection. As he was doing so, he heard Petty call him. Green ran outside the hut and saw Bassil standing over Petty, who was lying on the ground in a pool of blood. Green ran for help. He found two of Bassil's male cousins and told them that Bassil had stabbed Petty. The three of them returned to the scene and awaited the arrival of the police.

Green was taken by the police to the homicide office for questioning. Fearful of retaliation by Bassil's family, he denied knowledge of the person who committed the homicide. However, more than one week later, Green decided that his only safety was in getting the killer off the street; he told the police that Bassil was the killer.

Sheila Bassil, another cousin of appellant, testified that on the evening in question, appellant had visited her apartment in the vicinity of the murder shortly before the murder, and asked for a cigarette. She falsely denied that she had any. Upon arising the next morning, she found her cigarettes and a pocket knife belonging to her boyfriend, Wilkins, were missing from the headboard of her bed. She reported these facts to the police when they interrogated her.

The defense sought to discredit the testimony of Sheila Bassil and to suggest that she was lying to cover up for her boyfriend, Wilkins; the defense suggested that Wilkins was the real culprit. In attempting to do so, the defense called witnesses who contradicted Sheila Bassil's testimony about the whereabouts of Wilkins on the night in question and his access to the knife. One witness testified to a prior inconsistent statement made by Bassil on this point; Wilkins himself also testified and contradicted Sheila Bassil on this point. The trial court refused to allow the defense to introduce reputation evidence concerning Sheila Bassil's bad reputation for truth and veracity.

## II

The trial court ruled, as a matter of law, that evidence of the bad reputation for truth and veracity of Sheila Bassil was

---

1. He also contends that there was plain error in the admission of certain evidence and that there was prosecutorial misconduct mandating reversal. We find no merit to either contention. *See Watts v. United States,* 362 A.2d 706 (D.C.1976), as to the first contention. *See Sherrod v. United States,* 478 A.2d 644 (D.C.1984), as to the second contention.

Likewise, we find no merit to Bassil's *pro se* claim of ineffectiveness of trial counsel. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

inadmissible. The government does not contend that this ruling is legally correct and concedes that the ruling did not constitute an exercise of trial court discretion.[2] The ruling was error. *McLean v. United States,* 377 A.2d 74, 77 (D.C.1977); *Teese v. Huntingdon,* 23 How. 2, 7, 16 L.Ed. 479 (1859); *Fletcher v. United States,* 42 App. D.C. 53, 67 (1914) (citing *Teese v. Huntingdon, supra*); *United States v. White,* 5 Cranch, C.C. 38 (Cir.Ct.D.C.1836); *Patriotic Bank v. Coote,* 3 Cranch, C.C. 169 (Cir. Ct.D.C.1827). *See generally* 2 WHARTON'S CRIMINAL EVIDENCE § 471 (13th ed. 1972); FED.R.EVID. 608(a). We repeat our prior holding; evidence of bad reputation for truth and veracity is admissible on the issue of a witness' credibility. The discretion generally vested in the trial court with respect to the admissibility of evidence must be weighed against the constitutional rights of a defendant to confront witnesses and to present a defense. *See United States v. Davis,* 639 F.2d 239, 244 (5th Cir.1981). Thus, we must determine whether the error mandates reversal.

The United States contends that the test to be applied is that of nonconstitutional error set forth in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).[3] Bassil contends that the appropriate standard is that of the constitutional error test of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[4] As set forth below, we conclude that the error was of constitutional magnitude and that *Chapman* is the appropriate yardstick.

## III

■ A criminal defendant has a constitutional right to confront witnesses against him. *See Delaware v. Van Arsdall,* — U.S. —, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *United States v. Abel,* 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984); *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974); *Springer v. United States,* 388 A.2d 846, 854 (D.C.1978). As the Supreme Court recently stated:

> We think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness."

*Van Arsdall, supra,* 106 S.Ct. at 1436 (quoting *Davis v. Alaska, supra,* 415 U.S. at 318, 94 S.Ct. at 1111.)

■ A criminal defendant also has the right to present evidence, testimonial and otherwise, in his own defense. "The right to offer the testimony of witnesses and to compel their attendance, if necessary, is in plain terms the right to present a defense.... This right is a fundamental element of due process of law." *Washington v. Texas,* 388 U.S. 14, 18, 87 S.Ct. 1920, 1922, 18 L.Ed.2d 1019 (1967).

■ At times, the right of confrontation and the right to present a defense intersect. While cross-examination is the major means of vindicating the right of confron-

---

**2.** *See Johnson v. United States,* 398 A.2d 354, 363 (D.C.1979) ("Failure to exercise choice in a situation calling for choice is an abuse of discretion—whether the cause is ignorance of the right to exercise choice or mere intransigence— because it assumes the existence of a rule that admits of but one answer to the question presented.")

**3.** "[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the

error, it is impossible to conclude that substantial rights were not affected." *Id.,* 328 U.S. at 765, 66 S.Ct. at 1248. We have adopted *Kotteakos* as our nonconstitutional harmless error test. *See, e.g., Powell v. United States,* 455 A.2d 405, 411 (D.C.1982); *Miller v. United States,* 444 A.2d 13, 16 (D.C.1982).

**4.** "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.,* 386 U.S. at 24, 87 S.Ct. at 828.

tation, *Van Arsdall, supra,* 106 S.Ct. at 1435, it is not the exclusive means of doing so. For example, while a witness may be impeached for bias by cross-examination, he can also be so impeached by character evidence, conduct, prior conviction, etc. *United States v. Abel, supra,* 105 S.Ct. at 465. Federal courts have long "upheld use of extrinsic evidence to show bias...." *Id.* at 468–69. Whether a defendant seeks to tarnish the credibility of a government witness by cross-examination or direct evidence, he is seeking to do the same thing: "... to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witnesses." *Davis v. Alaska, supra,* 415 U.S. at 318, 94 S.Ct. at 1111. Thus, whether the error in prohibiting testimony of a witness' untruthful reputation is analyzed under the Compulsory Process Clause of the Sixth Amendment (or Fourteenth Amendment due process in state court proceedings), *see United States v. Watson,* 669 F.2d 1374 (11th Cir.1982); *United States v. Davis, supra,* or under the Confrontation Clause, we think the same test should be applied in determining the consequence of that error.

In the last term, the Supreme Court determined the test to be applied where cross-examination guaranteed by the Confrontation Clause had been erroneously terminated. In *Delaware v. Van Arsdall, supra,* the Court ruled that the test of *Chapman v. California, supra,* is the appropriate one.[5] We hold that the *Chapman* test is also the appropriate one where the trial court has erroneously denied a defendant the right to challenge the credibility of a government witness with affirmative testimony of that witness' reputation for untruthfulness.

■ Application of the constitutional harmless error test leads us to conclude the error was harmless beyond a reasonable doubt. By no means was Sheila Bassil an essential or key government witness. At most, her testimony tended to show two things: (1) that the defendant was in the vicinity of the killing some time around the time of the murder, and (2) that he had access to a pocket knife. Her testimony was corroborated as to the defendant's presence in the vicinity of the murder at the relevant time. On the second point, Green saw Bassil in possession of a knife immediately prior to the murder. On the point where corroboration of Sheila's testimony was lacking, *i.e.,* Wilkins' access to his pocket knife at the relevant time, her credibility had already been seriously undermined by Wilkins' testimony and her prior inconsistent statement. In sum, the government's case rose or fell on the testimony of Green and the evidence which substantially corroborated his testimony. Sheila Bassil played only a bit part, at most.

*Affirmed.*

BELSON, Associate Judge, concurring in result.

I join in the opinion of the court except for its holding that the erroneous exclusion of evidence of the bad reputation of Sheila Bassil for truth and veracity was error of constitutional dimension.

I think there is no constitutional right to impeach a government witness by evidence of bad reputation for truth and veracity. The legislature, I submit, could enact a law eliminating reputation impeachment without violating the constitution.[1] Therefore, in my view, the trial judge's error was non-constitutional in nature, and our review for harmless error should be under the less stringent formula set forth in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239,

---

**5.** The Court thus effectively overruled so much of this court's holding in *Springer v. United States, supra,* as applied a per se reversible standard to *in limine* limitations on certain cross-examination.

**1.** In fact, the Advisory Committee's 1969 preliminary draft of FED.R.EVID. 608(a) allowed testimony of opinion only, *i.e.,* not reputation, as to the credibility of a witness. 3 J. WEINSTEIN, EVIDENCE, ¶ 608[02] (1985).

90 L.Ed. 1557 (1946) rather than the test for constitutional error announced in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. (1967).[2] *Cf. Parks v. United States*, 451 A.2d 591, 610 n. 37 (D.C.1982) (*Kotteakos* test applied where trial court excluded cumulative impeachment testimony of defense investigator concerning witness' identification of defendant).

The majority states, correctly, that by bringing out extrinsic evidence of a witness' bad reputation, a defendant seeks to do the same thing that he may accomplish by cross-examination, *viz.*, to tarnish the credibility of a government witness. But it does not necessarily follow, as the majority would conclude, that the erroneous exclusion of the extrinsic evidence of the government witness' reputation for untruthfulness is a Sixth Amendment violation. Such logic would lead to the conclusion that every erroneous exclusion of evidence bearing on the credibility of a government witness is constitutional error, a result that is far-reaching and unsupportable in view of the many forms of credibility impeachment available. *See, generally*, McCORMICK EVIDENCE, §§ 33–50 (3rd ed. 1984), regarding methods of impeachment. Moreover, in dealing with reputation testimony concerning character for veracity, we are dealing with one of the least reliable methods of credibility impeachment. *See Michelson v. United States*, 335 U.S. 469, 477, 480, 69 S.Ct. 213, 219, 220, 93 L.Ed. 168 (1948).

I recognize that, in this jurisdiction, when the defendant calls a witness to testify concerning a government witness' character for truthfulness, the defendant is limited to adducing testimony concerning the government witness' reputation for truthfulness, rather than adducing testimony that expresses the impeaching witness' own opinion of the truthfulness of the government witness. Cf. *Marcus v. United States*, 476 A.2d 1134, 1138 (D.C.1984). As a result, when a trial judge excludes reputation impeachment, the judge effectively excludes any testimony concerning the government witness' character for truthfulness.

The question is, therefore, whether the Constitution mandates that defendant be enabled to adduce some sort of evidence of a government witness' character regarding truthfulness, whether it be opinion evidence or reputation evidence. The answer, I think, is in the negative. Evidence of an opposing witness' character for truthfulness seems quite removed from the core rights protected by the confrontation clause (cross-examination, including the right to impeach by showing bias), *see Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974), and by the compulsory process clause (subpoena power and the right of a defendant to present a defense). *See Washington v. Texas*, 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1922–1923, 18 L.Ed.2d 1019 (1967).

There can be no doubt that the Constitution requires that a defendant be given ample means to call into question the credibility of a government witness. However, in light of the existence of other effective, probably superior, methods of credibility impeachment, I submit that it is inappropriate to constitutionalize the defendant's right to call witnesses to testify concerning a government witness' character for truthfulness.

---

**2.** Those tests are set forth in the opinion of the majority at footnotes 3 and 4.