**R & A, INC., Alex Gatzionis and Valerie Gatzionis, Appellants/Cross–Appellees,**

v.

**KOZY KORNER, INC. and John Vassilas, Appellees/Cross–Appellants.**

Nos. 93–CV–1384, 93–CV–1436, 93–CV–1454, 93–CV–1487, 93–CV–1690, 93–CV–1691, 93–CV–1697 and 94–CV–756.

District of Columbia Court of Appeals.

Argued March 16, 1995.

Decided Feb. 29, 1996.

**1064**

Richard B. Nettler, with whom Stacy E. Costello, Washington, DC, was on the brief, for appellants/cross-appellees.

Allen M. Hutter, Washington, DC, for appellees/cross-appellants.

Before FERREN and RUIZ, Associate Judges, and KERN, Senior Judge.

KERN, Senior Judge:

These appeals arise out of a dispute between R & A, Inc. and its president and vice-president, Alex and Valerie Gatzionis, and Kozy Korner, Inc. and its president, John

Vassilas.[1] The dispute centers on the use and occupancy of the Kozy Korner Cafe, a restaurant and carry-out located on the first floor of a three-story building owned by Vassilas at the corner of 20th and N Streets, Northwest. The eight appeals consolidated into and presented by this case challenge various orders and judgments the trial court has entered in resolving this protracted dispute. We affirm in part and reverse in part and remand to the trial court for further proceedings.

The record reflects that in June 1992, the parties entered into a lease agreement for seven years. R & A, Inc. and Mr. and Mrs. Gatzionis, individually (R & A), agreed to pay a monthly rental of $3,400 for the occupancy and operation of the restaurant, and Kozy Korner, Inc. and Vassilas, individually (Kozy Korner), agreed to renew and transfer to R & A (at R & A's election) a license to sell liquor in the restaurant.[2]

The lease provided in pertinent part:

Lessor [Kozy Korner] hereby warrants [to] the Lessee [R & A] that it is the owner of the Liquor License currently in effect for the demised premises.... Lessor shall *retain and renew* said Liquor License for the *use of* the demised premises for the term of this Lease Agreement.... In the event Lessor fails to retain or renew said Liquor License[,] ... this Lease shall become null and void and of no effect *at the option* of Lessee. The Lessee *at its election* may apply for a transfer of the said license in its name *at any time.* Lessor *shall cooperate* with Lessee in obtaining a Liquor License in its own name by executing any and all necessary permits, licenses and other documents.... [Emphasis added.]

In October 1992, Kozy Korner refused to transfer the liquor license to R & A as

---

1. Alex Gatzionis is the sole shareholder of R & A, Inc. and John Vassilas is the sole shareholder of Kozy Korner, Inc.

2. The 1992 lease supplanted a lease the parties had entered into on July 1, 1989, for a five-year term.

requested by R & A one month earlier pursuant to the lease agreement. The liquor license expired on October 30, 1992, because Kozy Korner had failed to renew it. As a consequence, R & A could no longer serve alcohol in the restaurant and suffered a marked decrease in its profits.

Also, according to Alex Gatzionis, who was the restaurant's chef, John Vassilas had orally agreed in the spring of 1989 to sell the restaurant to him and R & A, Inc. for $180,-000.[3] According to Gatzionis, Vassilas had agreed that the purchase price could be paid in monthly installments of $3,000 over a five-year period at which time Vassilas represented that Kozy Korner would transfer ownership of the restaurant and all its fixtures and equipment to R & A. As of September 1992, Gatzionis asserted that R & A had paid $120,000 toward the purchase of the restaurant. On the other hand, Vassilas denied that he had ever agreed to sell the restaurant to Gatzionis and R & A, Inc., alleging that these $3,000 monthly payments had been part of the parties' rental agreement.

In November 1992, Kozy Korner sent R & A a written notice to quit the premises, asserting that it was in default under the lease for failure to pay the October rent. R & A justified its failure to pay Kozy Korner the full amount due[4] on the grounds of (1) the denial by Vassilas that any sales agreement existed between the parties, and (2) the refusal by Kozy Korner to transfer the liquor license as well as to remedy other alleged breaches of the lease relating to the use and occupancy permits which affected the restaurant's marketability.

In January 1993, Kozy Korner filed in the Landlord & Tenant Branch of the trial court a complaint for possession and back rent allegedly due and owing. In March 1993, R & A filed an action in the trial court's Civil Division for damages arising out of (1) Kozy Korner's breach of the lease's requirement that it maintain and transfer to R & A (at R & A's election) the restaurant's liquor license, and (2) Kozy Korner's fraudulent conduct in denying its contractual obligation to sell the restaurant to R & A.[5]

The trial court consolidated Kozy Korner's complaint for possession and back rent with R & A's action for damages for alleged fraud and breach of contract. On October 25, 1993, the trial of these issues commenced before a jury. The trial court, after R & A's witnesses had testified but before R & A concluded its case, directed a verdict in favor of Kozy Korner on the entirety of R & A's claims.[6] The jury ultimately proceeded to deliberation on Kozy Korner's claim for back rent and rendered a verdict on November 3, 1993, in favor of R & A, finding that it owed no rent to Kozy Korner.

## I.

Super.Ct.Civ.R. 50(a)(1) provides in pertinent part:

[If] ... a party has been fully heard with respect to an issue and *there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue,* the Court may grant a motion for judgment as a matter of law [ (also known as a motion for directed verdict) ] against that party.... [Emphasis added.]

In *Remeikis v. Boss & Phelps, Inc.,* 419 A.2d 986 (D.C.1980), this court cited with approval the following statement:

---

**3.** At the time of the sales agreement and of the 1989 lease (*see supra* note 2) Raul Campos, a long-time restaurant employee, was president of R & A, Inc. and owned 50% of the company's stock. However, on August 1, 1990, Campos sold, assigned and transferred all of his stock in R & A, Inc. to the company. Thereafter, Alex Gatzionis became president and sole shareholder of R & A, Inc. Thus, Campos is not a party to this litigation.

**4.** It is undisputed that in October 1992, R & A tendered the $3,400 monthly payment, but not the $3,000 monthly payment.

**5.** The complaint also alleged other breaches of the lease by Kozy Korner relating to the restaurant's use and occupancy permits.

**6.** R & A in its appeals challenges only the trial court's direction of a verdict on its claims of fraud for refusal to sell the restaurant and breach of contract for failure to maintain and transfer the liquor license.

On a motion for directed verdict, it is well settled that the evidence must be construed most favorably to the plaintiff; to this end he is entitled to the full effect of every legitimate inference therefrom. If upon the evidence, so considered, reasonable men might differ, the case should go to the jury; if, on the other hand, no reasonable man could reach a verdict in favor of the plaintiff, the motion should be granted.

*Id.* at 988 (citations omitted).

■ Accordingly, we must review the evidence R & A presented in support of its fraud and breach of contract claims against Kozy Korner, construing such evidence "most favorably" to R & A, and determine whether upon such evidence "reasonable men might differ" or whether "no reasonable man could reach a verdict in favor of" R & A.

■ We turn first to the propriety of the trial court's direction of a verdict in favor of Kozy Korner on R & A's claim of fraud. Alex Gatzionis testified at trial on behalf of R & A that Vassilas made the following representations over the course of several meetings during the months of May and June 1989: (1) that Vassilas, acting on behalf of himself and Kozy Korner, Inc., would sell the restaurant to R & A for $180,000; (2) that if $180,000 was paid in monthly installments of $3,000 over a five-year period, then Vassilas, acting on behalf of himself and Kozy Korner, Inc., would transfer ownership of the restaurant along with the restaurant's various permits and licenses (including the liquor license) to R & A; and (3) that R & A had a security interest in the restaurant's fixtures, furniture and equipment which would turn into an ownership interest upon payment of the $180,000. [Oct. 26, 1993 Tr. at 34–36; 42; Oct. 27, 1993 Tr. at 8–9].

Gatzionis also testified that (1) the purchase agreement was not reduced to writing because Vassilas did not want the sale in writing; (2) the $3,000 monthly payments were made in cash because Vassilas requested in July 1989 that these payments be made in cash; and (3) when he attempted to make these payments by check in September and October 1992 (pursuant to the advice of his new accountant), Vassilas would only accept cash. [Oct. 26 Tr. at 41–43; 67–69].

We are persuaded that, viewing Gatzionis' testimony in the light most favorable to R & A, reasonable jurors could conclude (1) that Vassilas, acting on behalf of himself and Kozy Korner, Inc., knowingly misled R & A into believing that he wanted to sell his restaurant business, and (2) that R & A made its $3,000 a month payments acting upon this belief. Specifically, a jury could reasonably conclude upon hearing testimony presented by R & A that Vassilas deliberately made a false representation of material fact with the intent to deceive and that R & A paid Kozy Korner $120,000 (as of September 1992) in reliance upon this misrepresentation.

We note that this court in *Remeikis* stated with respect to a claim of fraud:

The elements of fraud are (1) a false representation (2) of material fact (3) knowingly made (4) with intent to deceive and (5) action taken in reliance upon the misrepresentation.

*Remeikis, supra,* 419 A.2d at 988 (citations omitted). Accordingly, we conclude that R & A, like the plaintiffs in the *Remeikis* case, presented sufficient evidence to withstand a motion for directed verdict and the court should have allowed its fraud claim to go to the jury.[7] *Id.* at 988–89 (appellants presented sufficient evidence of fraudulent scheme misrepresenting extent of termite damage in newly purchased house).

■ The record reflects that the trial court accepted as true, for the purpose of determining whether to direct a verdict against R & A, the claim by R & A that its $3,000 a month payment was for the purchase of the restaurant and that Vassilas wanted this payment to be in cash. [Oct. 28, 1993 Tr. at 111A]. The court also accepted as true R & A's claim that in October 1992, acting upon the advice of an accountant, it insisted for their own protection that the purchase payments be made by check. [*Id.*

7. The record contains strong denials by Vassilas on behalf of Kozy Korner that he agreed to sell the restaurant, but it was for the jury of course to resolve this factual dispute.

at 112A]. Nevertheless, the trial court reasoned:

> [R & A] apparently wanted to protect their own interests but I don't see how they could force at that time ... Mr. Vassilas to accept a check. They didn't agree on a check, they'd been paying by cash the entire time. And unless he took a check, they decided he would be in breach of the sales contract.
>
> But as I've said, there is no evidence that in fact, other than what Mr. Gatzionis hoped or expected would happen, that there was any agreement, a meeting of the minds in terms of payment.
>
>    \*    \*    \*    \*    \*    \*
>
> So on this record I don't believe that Mr. Vassilas was in breach in October when he decided that he wasn't going to pay in check—by way of check because there was no understanding between the parties as to that issue.... So I don't see how any fraud claim would lie on these facts either.

[*Id.* at 112A–113A]. However, even if there was no "meeting of the minds" between the parties over the method of payment, R & A had presented evidence from which the jury could reasonably conclude that Vassilas fraudulently misrepresented his intentions to sell the restaurant to R & A and R & A paid money to him in reliance upon this substantial misrepresentation.[8] Accordingly, we conclude that the trial court erred in directing a verdict in favor of Kozy Korner upon R & A's claim of fraud.

On remand, the trial court additionally should determine whether the wrong R & A alleged it had suffered as a consequence of

Kozy Korner's failure to honor the oral purchase agreement sounds in contract or tort. *See Millard v. Lorain Inv. Corp.*, 184 A.2d 630 (D.C.Mun.App.1962) (the remedies of recision and fraud are mutually exclusive). We note that the court, in directing a verdict in favor of Kozy Korner upon R & A's fraud claim, analyzed the issue from the perspective of a breach of contract action [Oct. 28, 1993, Tr. at 112A–113A] (discussed *supra*, at 1066–1067).[9]

## II.

■ We turn now to the trial court's direction of a verdict in favor of Kozy Korner on R & A's claim for damages for breach of the lease insofar as it required Kozy Korner to maintain the liquor license and effect its transfer to R & A at R & A's election.[10] The trial court concluded that the testimony by R & A's witnesses failed to provide the jury sufficiently certain evidence as to the losses it had suffered as a consequence of Kozy Korner allowing the liquor license to expire. Accordingly, the court directed a verdict in favor of Kozy Korner.

This court has established parameters for the degree of proof the jury must have in order to determine properly the loss of anticipated business profits. In *Dravillas v. Vega*, 294 A.2d 363 (D.C.1972), we noted:

> An injured party will not be precluded from recovering damages because he cannot prove his *exact* damages.

*Id.* at 365 (emphasis added). On the other hand, this court in *Garcia v. Llerena*, 599 A.2d 1138, 1143 (D.C.1991), made clear that a

---

8. We note that the statute of frauds, D.C.Code § 28–3502 (1991 Repl.), bars the enforcement of an oral contract that cannot by its terms be performed within one year. Here, the terms of the agreement made orally between Gatzionis and Vassilas provided for monthly payments over five years. However, an exception to this statute is when partial performance has occurred. *See, e.g., Landow v. Georgetown–Inland West Corp.*, 454 A.2d 310, 313 n. 3 (D.C.1982) (partial or complete performance under oral contract may justify removing it from statute of frauds); *Amberger & Wohlfarth, Inc. v. District of Columbia*, 300 A.2d 460, 463 (D.C.1973) (same). Here, the payment by R & A of $120,000 (as of September 1992) would constitute substantial partial performance. Also, we further note that D.C.Code

§ 28–3501 (1991 Repl.) would not bar the performance of this oral contract because the contract did not convey real estate but only the restaurant's business including its fixtures and equipment.

9. We have previously held that trial courts are not bound by a plaintiff's characterization of an action. *Maddox v. Bano*, 422 A.2d 763, 765 (D.C.1980) (citing *Kelton v. District of Columbia*, 413 A.2d 919, 922 n. 5 (D.C.1980)). Thus, the trial court should clarify whether the facts R & A claims to support an action for fraud actually state a claim grounded in breach of contract.

10. *See supra* at 1064.

plaintiff seeking to recover lost profits must prove his damages to a "reasonable degree of certainty." *Id.* at 1143 (citation and internal quotation omitted). That is, "[t]he calculation of lost profits must be based upon evidence which leads to a reasoned conclusion." *Id.* at 1143 n. 9 (citation omitted). In *Garcia,* we concluded that the party seeking to recover damages "failed to introduce evidence of damages that would have permitted the jury to come to an award for lost profits *based on anything but speculation." Id.* at 1144 (emphasis added).

The issue thus becomes whether the jury in the instant case had sufficient evidence to enable it to reach a reasoned, as distinguished from a speculative, verdict as to the amount of profits R & A lost as a consequence of Kozy Korner allowing the restaurant's liquor license to expire.

R & A presented testimony that without the liquor license its business so decreased that it was forced to cease its dinner service and serve only breakfast and lunch. R & A also presented testimony by an expert witness that the profitability of a business requires knowledge of its fixed expenses such as rent and insurance, which are not dependent upon the volume of sales, as well as its variable expenses which are dependent upon the volume of sales. [Oct. 28, 1993 Tr. at 52A]. Knowledge of the gross sales (or gross profits) for a particular time period is also required. [*Id.* at 53A]. According to the expert's testimony, the primary variable expenses of Kozy Korner Cafe were buying food and liquor for the restaurant and paying sales tax to the District of Columbia Government. [*Id.* at 52A–53A; 67; 71]. The other variable costs included the restaurant's shorter hours of operation (from November 1992 through the end of March 1993) and the cost of labor. [*Id.* at 57A–58A; 61A–62A].

This witness concluded that the amount of lost profits from November 1992 through July 1993 was $75,200. He derived this fig-

ure, according to his testimony, by taking the gross sales for November 1991 through July 1992 (when the restaurant had a valid liquor license and was thus able to serve liquor) and subtracted this total from the gross sales for November 1992 through July 1993 (when the restaurant had no liquor license and stopped serving liquor). This amount represented the total loss in gross sales. [*Id.* at 55A]. The expert then deducted the primary variable expenses (food and liquor purchases and District of Columbia sales tax) from the total loss in gross sales, ending up with an annualized lost profit of $75,200.[11] [*Id.* at 55A–56A].

The trial court, in directing a verdict in favor of Kozy Korner, stated that R & A's expert did not account for a "significant variable" in his analysis—the restaurant's shorter operating hours—and that the expert only determined R & A's lost gross profits without providing a way for the jury to calculate R & A's lost net profits. [Oct. 28, 1993 Tr. at 90A–91A].

In our view, R & A's testimony did present sufficient evidence from which the jury could find to a reasonable degree of certainty the amount of net profits it lost because Kozy Korner failed to renew the restaurant's liquor license (or to effectuate a transfer of the license to R & A). As we have noted, R & A presented expert testimony that the restaurant's ledgers showed the restaurant's actual itemized expenses, and that a listing of the restaurant's gross sales was used to calculate R & A's business losses. [Oct. 28, 1993 Tr. at 53; 56; 62]. Not only did R & A's expert witness identify in his testimony the source of his calculations, but he also presented ample testimony explaining the steps he went through to derive these calculations as well as the reasoning behind his methodology. Although Kozy Korner offered alternative explanations for R & A's business losses (other than the lack of a

11. The expert testified that since he was looking at two "ten-month" periods (November 1991–July 1992 and November 1992–July 1993), he had divided the gross sales figure for each period by "ten" and then multiplied it by twelve in order to get an annualized or a twelve-month projected figure. [*Id.* at 55A].

We note that the actual number of months in each of these two time-periods is nine, rather than ten. This apparent discrepancy in the expert's calculation will undoubtedly be clarified in further proceedings upon remand.

liquor license), it did not challenge the overall methodology used by R & A's expert.

We conclude upon the basis of the testimony in the record and viewing such testimony in the light most favorable to R & A, as we must do in our review of the trial court's grant of a directed verdict, that R & A's expert did provide the jury with a way to estimate with reasonable certainty R & A's lost net profits. That is, as we have noted, he explained that he had deducted R & A's primary variable costs from its gross sales. Thus, there was a reasonable basis for a jury to estimate R & A's lost net profits which is all that is required for the issue of lost profits to survive a motion for directed verdict. *Bedell v. Inver Housing, Inc.*, 506 A.2d 202, 205, 206 (D.C.1986) (no basis to make reasonable estimate where sole evidence of lost profits was "appellant's testimony that he had lost 'roughly around about twenty or thirty thousand dollars' in business income"). Furthermore, it is clear from the record that the expert did consider the restaurant's shorter operating hours in his analysis. [Oct. 28, 1993 Tr. at 57A; 62A].

*Garcia, supra,* 599 A.2d at 1143–44, upon which Kozy Korner relies, is distinguishable from the instant case. There, an injured tenant sought to recover lost profits arising from the loss of an opportunity to resume operations of a profitable restaurant because of the landlord's breach of an option to buy contract. However, in deriving his estimated net income (or net profit), the tenant did not rely upon his actual income and expenses but instead used "some formula that a third is something that you take home as net." *Id.* In addition, the tenant in *Garcia* failed to "lay any foundation or identify any source for the formula" he used to estimate his net returns from his restaurant. *Id.* at 1144. We concluded in *Garcia* that the trial court's direction of a verdict against the tenant was proper because he failed to present evidence of "fairly certain, ascertainable damages."

*Id.* at 1145. The result in *Garcia,* however, is not the case here.

Accordingly, the trial court erred in not allowing the jury to consider R & A's claim for damages resulting from the failure of Kozy Korner to maintain and transfer the liquor license.

### III.

The litigation between the parties did not end after the trial court's rulings that we have described. On February 14, 1994, R & A filed a complaint in the trial court against Kozy Korner seeking damages and injunctive relief based upon Kozy Korner's alleged breaches of the parties' lease by (1) failing to deliver the renewed liquor license (effective November 24, 1993) to R & A for use in the restaurant,[12] and by (2) failing to provide R & A with written notice, as required by the lease, of offers to buy the building which Kozy Korner had allegedly received between December 1993 and January 1994.[13]

Kozy Korner's defense to this complaint was that the lease agreement between the parties had terminated on October 13, 1993, when the trial court entered a judgment for possession of the premises in favor of Kozy Korner because R & A did not pay on October 1st the amount of $8,000 as provided in the court's protective order then in effect. Thus, in Kozy Korner's view, all of its obligations under the lease ceased as of the date—October 13, 1993—when the court entered its judgment of possession.

On May 19, 1994, the trial court granted Kozy Korner's motion for summary judgment. The court concluded that (1) the judgment of possession it had entered on October 13, 1993 in favor of Kozy Korner operated as a complete bar to both of R & A's claims presented in February 1994, because such judgment had terminated the lease between the parties and hence any obligations Kozy Korner had to R & A as the tenant under the lease; and (2) even if the October 1993,

---

12. Under the lease, Kozy Korner had an obligation to "retain and renew said Liquor License for the use of the demised premises." *See supra* at 1064.

13. The lease provided in pertinent part:

[If] Lessor receives an offer to purchase the building ... from a third party, Lessor shall promptly notify Lessee of said offer in writing. Lessee shall have the right to purchase the property under the same terms and conditions....

judgment for possession did not operate as a complete bar to R & A's February 1994 claims, Kozy Korner would be entitled to judgment as a matter of law at least on R & A's claim of not receiving its right to first refusal of purchase offers under the lease because there was insufficient evidence to create a genuine issue whether Kozy Korner had received an offer to purchase. In brief, the trial court concluded that R & A's assertion upon "information and belief" that Kozy Korner had received offers to purchase the building from third parties did not create a disputed fact precluding summary judgment.

In deciding whether the trial court properly entered judgment summarily in favor of Kozy Korner, we must review the record and determine whether any material factual issue exists which would preclude the grant of summary judgment. *See, e.g., Brown v. GMAC*, 490 A.2d 1125, 1126 (D.C. 1985); *Sledd v. WMATA*, 439 A.2d 464, 468 (D.C.1981). We are required to view the record in the light most favorable to the party opposing the motion and resolve any doubt regarding the existence of a factual dispute against the moving party. *See, e.g., Brown, supra*, 490 A.2d at 1126. Also, we must determine whether the trial court correctly applied the substantive law in concluding that the prevailing party was entitled to judgment as a matter of law. *See, e.g., Burch v. Amsterdam Corp.*, 366 A.2d 1079, 1083–84 (D.C.1976); *Tompkins v. Washington Hosp. Center*, 433 A.2d 1093, 1099 (D.C. 1981).

We begin our analysis of the propriety of the trial court's entry of summary judgment by recounting the chronology of events leading to the court's decision to grant a judgment for possession of the restaurant premises in favor of Kozy Korner on October 13, 1993. We first note that on February 1, 1993, subsequent to the filing by Kozy Kor-

ner of its complaint for possession based upon R & A's alleged failure to pay rent, the trial court entered a protective order directing R & A to pay directly to Kozy Korner rather than into the court registry $3,400 per month. This amount was based upon the amount of rent the parties' 1992 lease required and R & A's cancelled rent checks indicated.

The record reflects that thereafter R & A paid monthly to Kozy Korner the amount the trial court had ordered. On August 3, 1993, the trial court, *sua sponte*, increased the amount of the protective order from $3,400 to $5,000 per month based upon the acknowledgement by both parties that R & A, in addition to paying rent, was also making a $1,600 monthly payment to Vassilas pursuant to an employment agreement. However, the trial court also granted R & A's request to hold thereafter an evidentiary hearing devoted solely to a determination of the proper amount of the protective order pending ultimate resolution of the parties' dispute.

The trial court held this hearing on September 29 and 30, 1993. At its conclusion, the trial court increased the amount of the protective order to $8,000 per month *nunc pro tunc* to August 1, 1993. [Sept. 30, 1993 Tr. at 91]. The court stated that the dispositive issue in its setting the amount of the protective order is normally "what the written agreement reflects with respect to what the contract rent should be." [*Id.* at 87]. However, the trial court expressed concern that in the instant case the parties vigorously disputed the amount of the monthly rent.[14] Given this feature of the case, the court decided to rely upon the credibility of the parties testifying on this issue, despite what the lease expressly provided, in order to determine the parties' true contractual intent. [*Id.* at 89]. Ultimately, the court cred-

---

14. The position of Kozy Korner throughout this litigation has been that all payments made pursuant to their employment agreement with R & A were really rental payments. Vassilas testified that he never did any work for the Gatzionises and that he wanted part of the rent paid pursuant to an employment agreement in order to maintain his social security eligibility [Oct. 27, 1993 Tr. at 161–62; 165–67; 188–89]. R & A's position, as reflected by Gatzionis' testimony, has

been that the payments made pursuant to the employment agreement were wages earned by Vassilas for his on-going consulting services [Oct. 26, 1993 Tr. at 40; 44–49]. In connection with its fraud claim, R & A has further asserted that, in addition to the rent, it made monthly payments to Kozy Korner pursuant to a sales agreement. Kozy Korner has denied this, claiming that these payments were also part of the parties rental agreement. *See supra* at 1064–1065.

ited the testimony of Vassilas that $8,000, rather than $3,400 as stated in the lease the parties executed, represented the fair use and occupancy value as understood by both parties. [*Id.* at 87–92].

R & A did *not* pay Kozy Korner the amount the court required in its protective order of September 30th.[15] R & A, in defense of their failure to pay, asserted that it was financially unable to do so because of the losses they had sustained at the restaurant as a consequence of Kozy Korner's failure to renew (or to transfer) the liquor license. [Oct. 13, 1993 Tr. at 6–8]. However, the trial court concluded that financial hardship by itself was not a sufficient defense in a commercial lease situation. [*Id.* at 9–11]. Thereafter, on October 13, 1993, the trial court entered a judgment for possession in favor of Kozy Korner because of R & A's failure to pay the $8,000 amount required by the protective order for August as well as September. [*Id.* at 10–11].

On November 3, 1993, as we have noted, the jury returned a verdict in favor of R & A on Kozy Korner's action for possession and back rent allegedly due and owing by finding that it did not owe any back rent at all to Kozy Korner. On November 4, 1993, R & A sought in this court an emergency stay of the trial court's protective order of September 30th which had increased the amount R & A was to pay to the sum of $8,000 a month. This court granted such a stay.

On November 12, 1993, this court continued its stay and remanded the record to the trial court to reconsider the amount of its September 30th protective order in light of (1) the verdict the jury had entered on November 3rd that R & A owed no back rent, and (2) "other appropriate considerations." On remand, the trial court entered a new protective order on November 30th directing R & A to pay to Kozy Korner $3,400 per month, *nunc pro tunc* to October 1, 1993. R & A tendered $10,200 to Kozy Korner, which represented the amount due and owing for the months of October, November and De-

cember 1993, under this new protective order.

■ The issue presented is whether, under the particular circumstances we have recounted, the trial court correctly ruled that the lease between the parties ended as a matter of law on October 13, 1993, and therefore Kozy Korner was summarily entitled to judgment in its favor. We note that the court's October 13th judgment for possession rested upon the failure of R & A to pay the amount of the court's September 30th protective order. However, we further note that the trial court supplanted this protective order with a new protective order on November 30th. Important to the disposition of this case, in our view, is that the trial court expressly made this November 30th protective order retroactive to October 1, 1993. Thus, the record reflects that R & A acted in compliance with the court's November 30th protective order by tendering payment for the months of October, November, and December of 1993, and for January 1994. Under these particular circumstances, we are not persuaded that such judgment for possession, resting entirely upon an order that the trial court thereafter effectively revoked, could terminate the lease between the parties.

■ Contrary to Kozy Korner's contention on appeal, a judgment for possession based on non-payment of a protective order does not have collateral estoppel effect. A protective order is an equitable remedy designed to ensure that the landlord is not "exposed to a prolonged period of litigation without rental income" while the tenant remains in possession pending the outcome of a suit for possession. *Davis v. Rental Associates, Inc.,* 456 A.2d 820, 823 (D.C.1983) (citation and internal quotations omitted). This type of order is an interim order and is not a determination of the merits of a case. *Id.* at 829 ("[T]he purpose of the protective order is to preserve the status quo in a contested suit for possession *until* it can be determined on its merits") (emphasis added); *Habib v.*

15. Since this order by its terms fixed the payment due and owing for each of the months of August and September as $8,000 and R & A had paid only $3,400 each month, the September 30th protective order required R & A to pay an additional $9,200—the difference between $16,000 and $6,800.

*Thurston*, 517 A.2d 1, 23–24 (D.C.1985) ("It often will be true ... that the amount of money in the [court] registry [paid pursuant to a protective order] is not necessarily the amount to which the landlord is ultimately entitled to for rent/damages").

Kozy Korner also argues, citing *Davis v. Rental Associates, supra*, that R & A's failure to abide by the trial court's September 30th protective order constituted a contemptuous action justifying the sanction of the court's judgment for possession. *Davis* makes clear that the imposition of any sanction for failure to abide by a protective order must be grounded upon equitable considerations. (*Id.*, 456 A.2d at 823–24). Here, the trial court supplanted with a very different protective order the particular protective order which R & A had failed to obey. Whereupon, R & A promptly tendered payment in full of this new protective order. It has long been recognized that a tenant's full tender of rent due and owing avoids the entry of a judgment for possession. *See Trans–Lux Radio City Corp. v. Service Parking Corp.*, 54 A.2d 144 (D.C.Mun.App. 1947).

In our view, the trial court's determination under the particular circumstances of the instant case to enter a judgment for possession upon the basis of a flawed protective order, as evidenced by its decision to replace retroactively this order, is inequitable and hence inappropriate. Accordingly, we conclude that the trial court erred in entering summary judgment in favor of Kozy Korner on R & A's claim for damages allegedly incurred up until February 1994, based upon Kozy Korner's alleged refusal to maintain and transfer the liquor license as required by the lease.

The struggle between the parties drew to a close in the spring of 1994. Thus, on February 9, 1994, Kozy Korner filed a motion in this court asking that we lift the stay because R & A had failed to make the payment of $3,400 for February as required by the trial court's November 30th protective order. On March 10, 1994, this court denied Kozy Korner's motion with the proviso that R & A make both the February and March payments and all payments thereafter in a timely fashion. R & A did not make either the February or March payment, apparently because of financial difficulties. On March 21, 1994, Kozy Korner filed a motion in this court to lift the stay we had granted earlier. We did so on March 30, 1994. Kozy Korner obtained possession of the restaurant on April 12, 1994, by obtaining and executing a writ of possession, based on the October 13th judgment for possession.

We do not understand R & A to dispute that when it failed in February 1994, to pay the amount of the court's revised protective order, the lease then ended by reason of R & A's breach. However, it is clear from the lease that R & A is entitled to seek damages allegedly incurred due to Kozy Korner's failure to retain and renew for the use of the restaurant (or to transfer to R & A at R & A's election) both the original and renewed liquor licenses up until R & A's breach of the lease in February 1994. Contrary to Kozy Korner's contention on appeal, the lease does not preclude (or condition) R & A's right to sue for damages in this regard. *See supra* at 1064.

Turning to R & A's breach-of-lease claim based upon its allegation that Kozy Korner received offers to purchase the building without affording them the right of first refusal, the record reflects that R & A did not produce specific evidence that Kozy Korner had in fact received any offers to purchase the building from third parties. R & A, in its complaint and statement of disputed facts, offered only conclusory allegations that Kozy Korner had received offers to purchase from "certain third parties." Moreover, Gatzionis' affidavit submitted on their behalf adds no support to these conclusory allegations.[16]

16. In his affidavit, Gatzionis stated in pertinent part:

In December, 1993 and January, 1994, R & A received a number of telephone calls and correspondence at the Restaurant from real estate agents regarding the sale of the Building. During the same time period, R & A received a number of visitors (not customers) at the Restaurant who inspected the Restaurant and the Building.

It is well-settled that once the moving party has made a showing that the record contains no material factual issue, the burden shifts to the nonmovant to show that such an issue exists. *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198 (D.C. 1991). Moreover, "[c]onclusory allegations by the non-moving party are insufficient to establish a genuine issue of material fact or to defeat the entry of summary judgment." *Id.* (citation omitted); *O'Donnell v. Associated General Contractors, Inc.*, 645 A.2d 1084, 1087 (D.C.1994) (same) (quoting *Beard, supra*, 587 A.2d at 198); *Gilles v. Ware*, 615 A.2d 533, 553 (D.C.1992) (Wagner, J., concurring) (same). The non-movant must rebut the moving party's initial showing of no genuine issue of material fact "with specific evidence which supports his legal theory." *Id.; see also* Super.Ct.Civ.R. 56(e) ("the adverse party's response, by affidavits or otherwise . . . must set forth *specific facts* showing that there is a genuine issue for trial") (emphasis added). In our view, R & A has failed to meet its burden on this issue. Nor is there anything in the record on appeal which supports the claim that Kozy Korner received an offer to purchase the building from a third party. Accordingly, we find no error in the trial court's decision to grant summary judgment in favor of Kozy Korner on this issue.

**IV.**

Finally, we address Kozy Korner's contentions made in its cross-appeal. Kozy Korner claims that the jury verdict of November 3rd finding R & A owed no back rent was against the clear weight of the evidence. This is so, in the view of Kozy Korner, because the trial court directed out of the case R & A's claim of fraud and therefore

---

Defendants have not provided any written notice to R & A of any offers defendants received from third parties regarding the purchase of the Building.
[R. at 101]. The facts that real estate agents contacted the restaurant about the sale of the building or that unknown parties visited the restaurant appearing to be interested in owning the premises do not support the conclusion that Kozy Korner received offers to purchase the building from third parties.

---

any payments R & A made to Kozy Korner in excess of $3,400 had to be rent payments.

We note first that in order to preserve on appeal a claim that the verdict was not supported by the evidence, a party must present a motion for a directed verdict and a judgment notwithstanding the verdict. Super.Ct.Civ.R. 50 (1994); *Consumers United Insurance Co. v. Smith*, 644 A.2d 1328, 1338 (D.C.1994). Only then is the trial court empowered to reopen the judgment and order a new trial or enter judgment in favor of the movant as a matter of law. Super.Ct.Civ.R. 50(b) (1994). The record does not reflect, and Kozy Korner does not so assert, that such motions were presented.

Even assuming *arguendo* that Kozy Korner did present the motions and hence did preserve the issue on appeal, we are persuaded that there was sufficient evidence for the jury to conclude that R & A agreed to pay Kozy Korner $3,400 a month in rent, paid such rent, and thus did not owe Kozy Korner back rent. *See Consumers United Insurance Co., supra*, 644 A.2d at 1338; *Rich v. District of Columbia*, 410 A.2d 528, 533 (D.C.1979). The parties agreed to a monthly rental of $3,400 in the June 1992 lease, R & A tendered checks every month to Kozy Korner for $3,400, Kozy Korner claimed $3,400 per month as rental income on its federal income tax returns, and Alex Gatzionis testified that this was the agreed upon rent.

Kozy Korner also claims that the trial court erred when it instructed the jury on the defense of illegality.[17] We find no reversible error in the trial court's instruction in light of the fact that the jury found that the monthly rent of $3,400 was paid and thus did not consider the issue of illegality or how much back rent was owed. *See Carter v. United States*, 531 A.2d 956, 963 (D.C.

---

17. The trial court instructed the jury that if they found that R & A owed Kozy Korner back rent, they would then have to determine whether Mr. Vassilas' purpose in entering the employment agreement with R & A was to defraud the Social Security Administration. If the answer to this question was in the affirmative, the court instructed the jurors that they could not award Kozy Korner back rent in the amount of the employment contract, because an illegal contract cannot be enforced. [R. 11/2/93 at 114]

1987). In addition, we reject Kozy Korner's claim that the trial court erroneously excluded character evidence in the form of alleged instances of dishonesty by Mr. Gatzionis. The trial court stated before trial that "if you want to impeach [R & A's] testimony by putting character testimony on as to veracity and truthfulness, I may allow you to do that, but you can't put it in your case in chief because character is not an issue." [Tr. 8/1/93 at 10] We find no error in the trial court's ruling, especially in light of the fact that Kozy Korner did not attempt to introduce character evidence after R & A presented its case. *See Bassil v. United States,* 517 A.2d 714, 715–16 (D.C.1986) (evidence of bad reputation for truth and veracity is admissible on the issue of witness' credibility); FED. R.EVID. 608(a).

### V.

In sum, we reverse the trial court's direction of a verdict in favor of Kozy Korner on (1) R & A's claims for damages for Vassilas' alleged fraudulent misrepresentation of his intentions, acting on behalf of himself and Kozy Korner, Inc., to sell the restaurant to R & A, and (2) for Kozy Korner's alleged breach of the lease in failing to maintain and transfer the initial liquor license as required by the lease.

We also reverse the trial court's entry of summary judgment in favor of Kozy Korner on R & A's claim for damages allegedly incurred subsequent to the filing of its first complaint and continuing up until February 1994, arising from Kozy Korner's refusal to maintain and transfer the renewed liquor license as the lease required.

We affirm the trial court's entry of summary judgment for Kozy Korner on R & A's claim for damages due to Kozy Korner's alleged breach of the lease by failing to provide R & A with written notice of offers to purchase the building as required by the lease.

Finally, we reject Kozy Korner's claims on cross-appeal that (1) the jury verdict, which

found that R & A did not owe Kozy Korner any back rent, was against the clear weight of the evidence; (2) the trial court erred in instructing the jury on the defense of illegality; and (3) the trial court erroneously excluded character evidence.

Accordingly, the case is remanded to the trial court for further proceedings consistent with this opinion.[18]

*So ordered.*

RUIZ, Associate Judge, concurring in part and dissenting in part:

I have one disagreement with the reasoning in the majority's opinion. In my view the trial court correctly directed a verdict in favor of Kozy Korner on R & D's claim of fraud because the essence of R & A's claim is grounded on a breach of contract for the sale of a commercial business. What is in dispute in this case is not whether one party "misled" the other into entering a lease agreement to its detriment. *Cf. Remeikis v. Boss & Phelps, Inc.,* 419 A.2d 986 (D.C.1980) (reversing trial court's grant of a directed verdict striking fraud counts against realtor and termite inspection company that deceived prospective home buyer by withholding information about extent of termite damage in home in order to induce purchase contract between prospective home buyer and home seller). What is in dispute in the instant case is what were the terms of a contract that both parties acknowledge existed between them. The parties' oral understanding that the payments were to purchase the business, and not just for rent, are as much a part of their contract as the written lease agreement and can be considered by the court for the reasons set out in footnote 8 of the majority's opinion. Therefore, I concur with the majority that, on remand, the trial court should consider whether the facts alleged as a basis for the fraud claim, if proven, make out a contract claim. Because Kozy Korner has been well aware of all the facts alleged by R & A as the basis for its claims, I perceive no

---

**18.** We note that the trial court awarded costs to Kozy Korner in the actions the court adjudged in its favor. On remand, the award of costs should be reconsidered pursuant to Super.Ct.Civ.R. 54(d).

unfairness in allowing R & A to refocus its action exclusively on a contract theory.